CULPEPPER, Judge.
This is a suit under LSA-C.C. Article 2749, for the salaries which plaintiff would have received had his defendant employer not terminated his one year employment contract without cause. The district judge awarded plaintiff the full unearned salary but rejected his claim for retirement contributions accruing after his dismissal. The defendant appealed. Plaintiff answered the appeal, seeking an increase in the award as to the retirement benefits.
The issues are: (1) whether there was a contract of employment for a certain time, to-wit the year 1969, under Civil Code Article 2749; (2) whether the word “salaries” in Article 2749 includes the retirement contributions.
The facts show that in 1967 plaintiff was working for Louisiana Machinery Company, Inc. in Monroe, Louisiana, as a mechanic and serviceman for caterpiller equipment, at a salary of $200 per week. Pursuant to negotiations with Mr. D. E. Lester, Jr., president of the defendant corporation, Chenille, Inc. (formerly Del Enterprises, Inc.) plaintiff entered into a written contract of employment with defendant of date, July 29, 1967. Under this contract, plaintiff was defendant’s “equipment superintendent” for the year 1968. In addition to hospital insurance, travel expense, etc., the contract provided: “(1) Guaranteed minimum base salary of $12,000 per year. (2) Deposits of $2,000 annually in a retirement fund or pension plan that will be worth at least the following to you and your family at age 65.” (Then follows a list of the benefits.)
Plaintiff worked for defendant during 1968, but at the end of the year the contract was not renewed due to a certain misunderstanding between the plaintiff and Mr. Lester. However, during January of 1969, plaintiff and Mr. Lester negotiated with respect to the resumption of plaintiff’s employment. Pursuant to these discussions, a written contract of employment entitled “Equipment Superintendent Proposed Labor Contract 1969” was signed by the plaintiff and a representative of the defendant. With reference to salary, the 1969 contract provided:
“The board of directors has proposed in 1969 salary of $12,000 for the Repair Superintendent. It will be paid as follows :
“His monthly salary in the non-land clearing season (January through May) would be equal to 60% of his monthly salary in the land clearing season (June through December). On a weekly basis it would equal $153.40 for the first twenty-one pay periods of the year, $153.60 for the twenty-second pay period of the year, $262.50 for the remainder of the year.”
Additionally, the 1969 contract provided for travel expense, a two-week paid vacation, etc. and, with reference to the retirement plan, contained this provision: “(3) Funding of a pension plan for his retirement.” The exact amount to be deposited by the employer in the retirement or pension fund during the year 1969 was not stated.
Plaintiff did not begin his employment for 1969 until February 1. He worked and received his monthly salary, as quoted above from the contract, until September 30, 1969. As of that date, plaintiff’s employment was terminated by a prior letter from Mr. Lester explaining the sole reason was the company decision to “discontinue company operated maintenance of our tractors.”
Plaintiff filed this suit for the following amounts: (1) The weekly salary which he would have earned under the contract during the months of October, November and December of 1969, totaling $3,675. (2) Pension or retirement benefits for $1968, $2,000. (3) Pension or retirement benefits for 1969, $2,000 — Total $7,675.
*826 The district judge granted judgment for the $2,000 pension and retirement benefits due under the 1968 contract and defendant does not contest this award. The judgment also awards plaintiff the $3,367 claimed for salary. As to the 1969 retirement benefits, the judgment awards $1,-338.28, representing %.2 of the $2,000 which the trial judge found the defendant employer had agreed to pay under the 1969 contract. Defendant disputes these latter two awards.
The first issue is whether the 1969 employment contract was “for a certain time” within the meaning of LSA-C.C. Article 2749 which reads as follows:
“If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.”
The evidence shows that in January of 1969 plaintiff and his wife talked with Mr. Lester about reemployment and, pursuant to these discussions, the employment contract for 1969, portions of which are quoted above, was signed by plaintiff and defendant’s representative. The contract on its face is clearly for the year 1969 and not by the week or month. Furthermore, both plaintiff and his wife testified it was their understanding it was a contract for the entire year, the same as the one for 1968. Mr. Lester’s testimony to the contrary is not persuasive and was not accepted by the trial judge. The district court’s finding in this regard is fully supported by the evidence.
On appeal defendant argues the mere fact that an employment contract fixes a salary at a stated sum per year does not alone justify the conclusion that employment was for the entire year, citing Russell v. White Oil Corporation, 162 La. 9, 110 So. 70 (1926) and United Credit Company v. Croswell Co., 219 La. 993, 54 So.2d 425 (1951). These cases are distinguished. In Russell there was no written contract for the year in question and the evidence was not sufficient to prove employment for a certain time. In the United Credit Company case, the plaintiff was a secretary who sought to enforce her lien and privilege under Civil Code Article 3191 for wages which she had earned but had not been paid. The issue was one of preference between plaintiff’s privilege and that under a chattel mortgage, which had been recorded prior to the time that plaintiff’s wages became due. No issue under Civil Code Article 2749 was involved.
The next issue concerns the retirement contribution under the 1969 contract. Although the exact amount is not specified in the contract, plaintiff and his wife testified it was their understanding it would be the same as under the 1968 agreement. This is corroborated by the testimony of Mr. Harry Friedman, an insurance agent, who stated that in August of 1969, Mr. Lester inquired about the possibility of funding some type of pension plan for Mr. Brasher for the sum of $2,000 per year. The trial judge found the extrinsic evidence showed the intention of, the parties was that the sum of $2,000 would again be deposited by defendant in a retirement or pension plan for the year 1969. This finding is amply supported by the evidence.
Defendant argues that even assuming the 1969 employment contract provided for a $2,000 payment by the employer to a retirement or pension plan, this constituted a “fringe benefit”, as distinguished from salary, and is not recoverable under LSA-C.C. Article 2749. This is a serious question and is res nova in our jurisprudence.
Defendant correctly states that Civil Code Article 2749 is a penal statute which must be strictly construed. Word v. Winder, 16 La.Ann. 111 (1861); Trefethen v. Locke, 16 La.Ann. 19 (1861); Lloyd v. Dickson, 121 La. 915, 46 So. 919 (1908); Adler v. Castle-Hirsch-Lohmar, La.App., 165 So. 478 (2d Cir. 1936) and Smith v. *827 Pollock Co., 3 La.App. 125 (2d Cir. 1925). Webster’s New World Dictionary, College Ed., defines the word “salary” as a “fixed payment at regular intervals for services, usually other than manual or mechanical; distinguished from wages and fees.” Strictly construed, a “salary” is a fixed compensation for services rendered during a certain period of time, such as a week, month or year, and depends on the time and not the services rendered: Brandon v. Askew, 172 Ala. 160, 54 So. 605; Blaine County v. Pyrah, 32 Idaho 111, 178 P. 702. If the word “salary” in Civil Code Article 2749 is strictly construed, it would include only the fixed compensation paid at stated intervals, regardless of the services rendered, and would not include such other remunerations as bonuses, living expense, or retirement plan contributions. We are constrained to hold that since this is a penal statute and must be strictly construed, the word “salaries” does not include any amount which the employer agreed to pay for retirement or pension plans in 1969.
Plaintiff has cited Van Denburgh v. H. T. Higginbotham, Inc., 168 La. 461, 122 So. 581 (1929) and Signorelli v. Morice, La.App., 174 So. 124 (1st Cir. 1937), in both of which the court, without discussion, allowed recovery under Civil Code Article 2749 for sales commissions. Of course, a respectable argument can be made that if “salaries” includes sales commissions, it also includes retirement plan contributions. However, there is a distinction. Sales commissions are often a substantial part of the employee’s pay check and are usually paid the same as salary, i. e., on a weekly or monthly basis. Retirement plan contributions are more closely akin to other fringe benefits, such as hospital insurance, travel expense, board and lodging, etc. In any event, it is our view that if we give a strict construction to Article 2749, as we must since it is a penal statute, the word “salaries” cannot include retirement plan contributions.
The trial judge relied largely on the early case of Shea v. Schlatre, 1 Rob. 319 (1842) which was decided under Article 2720 of the Civil Code of 1825, the source of our present article. The plaintiff was a tavern manager under a contract which provided him and his wife with “boarding, lodging, and washing, * * * as well as with the necessary servants.” The court held these benefits were not included within the word “salaries”, stating: “The Article 2720 speaks only of the wages agreed on, and should not be extended to anything else.”
Of course, the construction which we have given the word “salaries” under Civil Code Article 2749 does not necessarily apply to other statutes. Each must be construed according to the applicable rules of statutory construction. For instance, our workmen’s compensation act expressly provides that it shall be liberally construed to effect its purpose and the courts consistently construed the word “wages” to include room, board, lodging and similar benefits, Collins v. Spielman, 200 La. 586, 8 So.2d 608. In Lobrano v. Police Jury of Parish of Plaquemines, 150 La. 14, 90 So. 423 (1921) the issue was the statutory authority of a constitutional convention to reduce the salaries of parochial officials. The court held that the compensation allowed the clerk of the district court, as ex-officio registrar of voters, was not a salary, but instead was fees. In Maes v. City of New Orleans, 97 So.2d 856 (Orl.La.App.19S7) the court held that the additional compensation paid by the state to city police was part of their “salary” and as such subject to 5% pension fund deductions.
The district judge awarded V12 of the $2,000 pension fund contribution for 1969, on the basis that plaintiff actually worked eight months, February through September. We agree this is logical, since plaintiff should receive any such benefits for the period of time that he actually worked.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.