422 So.2d 660 (1982)
J. Mark BARTLETT, Plaintiff-Appellee,
v.
DOCTORS HOSPITAL OF TIOGA and Diagnostic Health Care Services, Inc., Defendants-Appellants.
No. 82-288.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*661 Dorwan G. Vizzier, Alexandria, for defendants-appellants.
Gold, Little, Simon, Weems & Bruser, Robert G. Nida, Alexandria, for plaintiff-appellee.
Before FORET, CUTRER and STOKER, JJ.
CUTRER, Judge.
James Mark Bartlett (Bartlett) brought suit against Doctors Hospital of Tioga, Inc. (Doctors Hospital) and Diagnostic Health Care Services, Inc. (Diagnostic) seeking the remaining portion of his salary under an alleged one year employment contract pursuant to the provisions of LSA-C.C. art. *662 2749.[1] The trial court rendered judgment in favor of Bartlett against Doctors Hospital in the amount of $12,480.00 and against Diagnostic in the amount of $13,750.00. Doctors Hospital and Diagnostic appealed contending Bartlett was entitled to no recovery or, if recovery is allowed, it should be decreased. Bartlett answered the appeal seeking an increase in his award. We amend and affirm.
Doctors Hospital is located in Tioga, Louisiana, and, in addition to other medical services, it maintains and staffs a therapy department.
Diagnostic, located in Tioga, is a separate corporation which provides services to a number of local hospitals including Doctors Hospital. These services include nuclear scans, sonograms and echocardiograms. Sonograms (only tests pertinent to this suit) are tests in which internal structures of the body are reviewed through the use of sound waves. Burl Cupples was administrator of both of these institutions.
On June 4, 1981, Bartlett was employed in a full time capacity at Huey P. Long Hospital and in a part time capacity at Doctors Hospital. He worked in the respiratory department at both institutions. On this day Burl Cupples approached Bartlett and offered him a full time employment at Doctors Hospital and Diagnostic. The two men discussed the terms of Bartlett's employment that day in Cupples' office. The exact terms the two men agreed upon are in dispute and form the basis of this lawsuit.
Bartlett contends that he and Cupples agreed that Bartlett's working hours would be 8:00 A.M. to 4:30 P.M. each day. He would begin each day at Diagnostic performing sonograms at $12.50 per sonogram. After finishing his sonogram work at Diagnostic, which was usually before noon each day, Bartlett was to work the balance of the work day in the respiratory department of Doctors Hospital as its supervisor. His compensation from Doctors Hospital would be $6.50 per hour and would be set at 80 hours per pay period (two weeks) regardless of the time Bartlett actually spent in the respiratory department. Bartlett also maintains that Cupples assured him that his salary would be approximately $30,000.00 a year and that his employment was guaranteed for one year.
Cupples' version of their agreement is quite different. He states that Bartlett was to perform sonograms for Diagnostic at $12.50 per test, then Bartlett was to report to the respiratory department at Doctors Hospital and put in a full eight-hour shift at $6.50 per hour. Cupples contends that Bartlett's continued employment was dependent upon the quality of his work and upon his certification as a respiratory therapy technician before the next Medicare survey at Doctors Hospital (Doctors Hospital was required to have a certified respiratory therapy technician as the head of its respiratory department to qualify for benefits under a Medicare plan). Cupples denies that he and Bartlett agreed to a one year employment contract and also denies that he guaranteed Bartlett an annual salary of $30,000.00 a year.
Bartlett resigned from Huey P. Long Hospital the same day as the conversation with Cupples and immediately began work for Doctors Hospital and Diagnostic. During the first month of his new job, Bartlett received two hours of on-the-job sonography instruction for a few days each week. When this sonography instruction ceased Bartlett spoke with Cupples about the possibility of continuing this instruction under Paula Amsden, a registered ultrosonographer working at Rapides General Hospital. Bartlett set up a meeting between Cupples and Amsden to discuss the terms of Bartlett's instruction.
During the meeting between Cupples and Amsden the job of performing sonograms for Diagnostic was offered to Ms. Amsden. *663 Cupples stated that he was in a "hot seat" because the $62,000.00 mobile sonogram unit was not producing a satisfactory amount of business for Diagnostic. Cupples stated that he was not entirely satisfied with Bartlett's sonogram production and that he needed Ms. Amsden to get the mobile unit operating at full capacity again. Shortly thereafter Ms. Amsden accepted Cupples' offer.
Cupples later notified Bartlett that Amsden had been hired to perform the sonograms for Diagnostic, but that Bartlett would still be able to make the "sonogram" money that Cupples and Bartlett had previously agreed to. Cupples never told Bartlett how this would be accomplished.
On July 15, 1981, the working hours for the respiratory staff at Doctors Hospital were extended to 8:30 P.M. A dispute arose and Bartlett was terminated along with others of the staff.
Despite the fact that Bartlett's employment with Doctors Hospital and Diagnostic was officially terminated on July 16, 1981, he was told that he could not get his wages due from Doctors Hospital until the next pay period on July 31, 1981. Diagnostic paid the wages through July 16th. Bartlett filed suit against Doctors Hospital in Pineville City Court under LSA-R.S. 23:631 et seq.[2] for his wages due at termination, penalty wages and attorney's fees. He also filed suit against Doctors Hospital and Diagnostic in Ninth Judicial District Court under LSA-C.C. art. 2749 for the remaining salary under his one year employment contract with Doctors Hospital and Diagnostic. Bartlett was successful in his city court suit which this court affirmed, Bartlett v. Doctors Hosp. of Tioga, Inc., 415 So.2d 635 (La.App. 3rd Cir.1982). The judgment in that suit is now final. Bartlett was also successful in his Ninth Judicial District Court suit which is now before us on this appeal.
The issues of this appeal are:
(1) Whether filing the suit in Pineville City Court under LSA-R.S. 23:631 et seq. and in state district court under LSA-C.C. art. 2749 amounts to a splitting of Bartlett's cause of action;
(2) Whether Doctors Hospital and Diagnostic, through their administrator, Burl Cupples, and Bartlett entered into a contract of employment with a certain term of one year;
(3) Whether Doctors Hospital and Diagnostic, through their administrator, Burl Cupples, terminated Bartlett's employment without just cause; and
(4) Whether the trial court erred in its award of damages to Bartlett.

*664 (1) Splitting of a Cause of Action.

Doctors Hospital and Diagnostic allege error in the trial court's failure to find that Bartlett split his cause of action. They urge that Bartlett split his cause of action when he filed one suit in Pineville City Court for wages due upon termination of his employment and filed another suit in the Ninth Judicial District Court for his remaining salary under his alleged one year employment contract. Having received satisfaction from his city court suit first, Bartlett has, according to Doctors Hospital and Diagnostic, lost his right to pursue any future salary by virtue of LSA-C.C.P. art. 425.[3]
This brings up the question of whether R.S. 23:631 and C.C. art. 2749 create only one cause of action. We find that two separate causes of action are created by these statutes.
LSA-R.S. 23:631 et seq. creates a cause of action whereby a discharged or resigning employee can enforce his right to wages due him at the termination of his employment. This cause of action arises when the employer fails to pay the employee wages due him within 72 hours of his termination.
LSA-C.C. art. 2749 creates a cause of action whereby an employee, hired for a certain term and fired without just cause, can enforce his rights under the employment contract for the remaining portion of his salary. This cause of action is contractual in nature and arises upon termination of employment.
In summary, LSA-R.S. 23:631 and LSA-C.C. art. 2749 create separate causes of action. In filing separate suits under these statutes Bartlett did not split his cause of action. These causes of action can be pursued by separate suits.
Doctors Hospital and Diagnostic also urge that Bartlett's posture in state district court under C.C. art. 2749 is inconsistent with his posture in Pineville City Court under R.S. 23:631 et seq. Doctors Hospital and Diagnostic contend that Bartlett's posture under C.C. art. 2749 is an employee hired for a certain term, while his posture under R.S. 23:631 et seq. is an employee hired for an uncertain, indefinite term. Doctors Hospital and Diagnostic state that since Bartlett's posture in city court is inconsistent with the posture he is assuming in state district court, Bartlett should be precluded from pursuing his remedy under C.C. art. 2749 as an employee hired for a certain term. Doctors Hospital and Diagnostic suggest various forms of estoppel and res judicata as the vehicle for such a preclusion. Such a contention by Doctors Hospital and Diagnostic is without merit.
The Supreme Court in Mason v. Norton, 360 So.2d 178 (La.1978), found that the phrase "`by the day, week, or month'" in LSA-R.S. 23:631 is properly construed as describing the pay period, rather than the method of calculating wages. Under such an interpretation by the Supreme Court, the phrase of LSA-R.S. 23:631, "by the day, week, or month" does not preclude the possibility that a person so employed might also be employed for a certain term. We hold that, by suing for the relief provided by LSA-R.S. 23:631 et seq., a person is not estopped from suing under LSA-C.C. art. 2749 for future salary under an employment contract with a certain term.
The plea of res judicata is also without merit. As we have previously held, the causes of action under LSA-R.S. 23:631 et seq. and LSA-C.C. art. 2749 are not identical. The demands are founded on different causes of action, thus res judicata is not applicable.

(2) Whether This Was a Term Contract and, if so, Whether Bartlett Was Discharged for Cause.

When a contract of employment has been entered for a definite term just cause *665 is required for termination of employment during that term. Griffith v. Sollay Foundation Drilling, Inc., 373 So.2d 979 (La.App. 3rd Cir.1979).
The trial judge found that Doctors Hospital and Diagnostic did enter an employment contract for a fixed term with Bartlett. In his reasons for judgment the trial judge stated:
"I feel that the circumstances leading up to and surrounding the hiring of Mark Bartlett overwhelmingly corroborate his testimony that he had entered into a contract of employment with Doctors and Diagnostic for a period of one year.
"First off, Diagnostic was in a bind for they had just fired Mrs. Addington and they had no one to run that operation. Cupples was familiar with Bartlett's qualifications and suggested that he take the job with the understanding that he would have certified people to instruct him in Sonography and that this expense would be paid by Diagnostic. The offer from a money standpoint was most attractive to Bartlett but he had a good secure job and told Cupples that the only way he would take it would be with the understanding that it was for at least a period of one year."
A review of the testimony of Cupples shows discrepancies and shows that he was evasive, both of which reflects upon his credibility.
After a review of the testimony and the circumstances, we find that the trial court was not clearly wrong in its determination that Bartlett and Cupples had entered into a contract of employment for one year.
We next turn to whether Bartlett was terminated without just cause. Having found that Bartlett was employed for a fixed term and having awarded him his remaining salary under his one year employment contract, the trial court apparently felt that Bartlett's employment was terminated without just cause.
A short time before July 16, 1981, Bob McBride, Assistant Administrator of Doctors Hospital, approached Bartlett about making a new schedule of expanded hours for the respiratory department. Bartlett answered that expanded hours were impossible considering the number of personnel employed in the respiratory department. McBride then formed a schedule whereby the respiratory department was to operate from 6:00 A.M. to 8:30 P.M. instead of the prior schedule of 6:30 A.M. to 4:30 P.M.
On July 16, 1981, McBride had a meeting with Bartlett and the other members of the respiratory staff. McBride presented his new schedule and met instant opposition from those present. Exactly what transpired at this meeting is in dispute, but Bartlett testified that at some point he told McBride that he was not hired to work the extended hours proposed in the new schedule. He told McBride that he and Cupples had agreed upon an 8:30 A.M. to 4:30 P.M. schedule for his work. McBride then told all present that if they would not abide by this new schedule he would terminate the whole department. After Bartlett raised the question of having to work beyond 4:30, McBride terminated him.
McBride testified that when he informed Bartlett of the new hours, there was objection by the personnel. He told them that if they did not agree to work the new hours, he would have to terminate them. He then stated that he did not terminate them as they all resigned including Bartlett. The trial court evidently accepted Bartlett's statement that he was terminated after he objected to McBride's attempt to modify his contract of employment by extending the working hours from 4:30 P.M. to 8:30 P.M. Termination of Bartlett under these circumstances would be without cause.
In applying the review determined by Canter v. Koehring Company, 283 So.2d 716 (La.1973), this court finds that the trial judge was not clearly wrong in this regard.

(3) Whether the Trial Court Erred in Determining Bartlett's Award.

In awarding Bartlett the remaining salary under his contract of employment for *666 one year the trial judge stated in his reasons for judgment that:
"As mentioned above Bartlett was to receive $6.50/hr X 80 hr X 26 (number of pay periods) or $13,520 annually from Doctors and $12.50 for every sonogram he ran for Diagnostic. Diagnostic was averaging about 100 sonograms per month. Therefore, Bartlett's compensation due from Diagnostic is found to be $15,000. Bartlett has previously received pay for two pay periods, therefore judgment is rendered in his favor and against Doctors in the sum of $12,480.00 and against Diagnostic in the sum of $13,750.00. Legal interest is to run on both sums from date of judicial demand until paid and the defendants are cast for all costs."

The trial judge erred in these calculations in that he awarded Bartlett the sum of 24 pay periods (26 pay periods less 2 for which Bartlett was already paid). The error in this calculation can be seen when considering the fact that Bartlett had been paid through July 12, 1981 by Doctors Hospital and that he recovered the wages due him from July 13th through July 16th (date of employment termination in the city court suit). Diagnostic had apparently paid Bartlett through July 16th and was not a party to the city court suit. The trial judge failed to take this into consideration when he awarded Bartlett a salary for 24 pay periods as the remaining portion of his salary under his one year employment contract.
A more accurate award would reduce the trial court's award against Doctors Hospital by $211.66 with the latter amount representing the wages Bartlett had already received for July 13th through July 16th. A similar reduction of the award against Diagnostic is in order. This would reduce that amount by $250.00 (100 sonograms a month; 20 working days a month; 5 sonograms a day at $12.50 per sonogram equals $62.50 a day for four days [July 13th through July 16th]). The trial court judgment will be amended accordingly.
In answering the appeal Bartlett has sought to have his award against Doctors Hospital increased by $1,560.00. This amount is said to reflect the compensation of $10.00 for being subject to call and for call backs during the remaining portion of his employment of one year. Bartlett cites LSA-C.C. art. 1903[4] as authority for his prayer for increase.
This call back compensation was not a part of Bartlett's contract. When questioned about the elements of their agreement Bartlett does not mention call back compensation. Article 1903 does not apply to the contract in question.
A more appropriate description of the call duty would be as a departmental obligation shared by all members of the respiratory department. From testimony presented at trial it appears that all the members of the respiratory department performed this duty. They split the hours with each other and in turn shared the compensation Doctors Hospital paid for the call duty.
We conclude that call duty was not a part of Bartlett's contract but was a departmental practice shared by all members of the respiratory department. Accordingly, Bartlett's prayer for an increase is denied.
For the above reasons, the judgment of the trial court is amended by reducing the judgment against Doctors Hospital of Tioga to $12,268.34 and by reducing the judgment against Diagnostic Health Care Services, Inc. to $13,500.00. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendants-appellants.
AMENDED AND AFFIRMED.
NOTES
[1] LSA-C.C. art. 2749 states:

"If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived."
[2] LSA-R.S. 23:631 states, in pertinent part:

"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section." (Emphasis ours.)
LSA-R.S. 23:632 states:
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation."
[3] LSA-C.C.P. art. 425 provides:

"An obligee cannot divide an obligation due him for the purpose of bringing separate actions on different portions thereof. If he brings an action to enforce only a portion of the obligation, and does not amend his pleading to demand the enforcement of the full obligation, he shall lose his right to enforce the remaining portion."
[4] LSA-C.C. art. 1903 states:

"The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect."