GUIDRY, Judge.
Plaintiff sued his former employer, The Lake Charles Harbor and Terminal District (hereafter the District), for breach of an employment contract. The trial judge, for oral reasons assigned, found that there was a valid contract between plaintiff and the District; the District breached the contract when plaintiff was terminated as port director without cause on May 2, 1988; and, as a result, plaintiff was entitled to his annual salary prorated from the date of wrongful discharge until September 15, 1988, the effective date of Act 351 of 1988. Judgment was rendered accordingly. Plaintiff appealed. The District neither appealed nor answered plaintiffs appeal.
FACTS
The District was originally created as a political subdivision of the State by Act 67 of 1924 (La.R.S. 34:201 et seq.). The act provided that the District was to be governed by a board of commissioners appointed by the Governor for staggered terms.
On August 25, 1986, pursuant to the authority granted by La.R.S. 34:204, the District entered into a contract of employment with plaintiff. Pursuant thereto, plaintiff was hired as port director for a stated term of four years beginning September 15, 1986. Plaintiffs employment was terminated by the District, for no stated reasons and without a hearing, on May 2, 1988. Plaintiff filed this suit on June 2, 1988, seeking his salary for the remainder of the contract term as well as full retirement pay in an amount he would have received had he not been terminated. Subsequently, the Legislature adopted Act 351 of 1988, effective September 15, 1988, to amend Sections 202 and 204 of Title 34. La.R.S. 34:202, as amended, abolished the board of commissioners which existed at the time plaintiffs contract with the District was entered into and as it existed on the date his contract was terminated. In pertinent part, La.R.S. 34:202, as amended, provides as follows:
“The commissioners shall serve overlapping terms, as established by Act No. 67 of 1924, of six years each. The present members shall continue to serve on the board until September 15, 1988.” (Emphasis ours)
The trial court, in rendering judgment as aforestated, concluded as follows:
“Defendant’s final and most serious defense is that the contract terminated by operation of law. This is based on L.S.A. R.S. 42:3, which I cite, ‘The term of office of all employees or officials elected by any State, District, Parochial or Municipal Board shall not be for a longer period of time than the term of office of the membership of the Board electing them so that each respected [sic] Board shall elect its own officers and employees’. This statute was recently discussed by our Third Circuit in the case of Juneau v. Avoyelles Parish Police Jury, 482 So2d 1022 (La.App. 3rd Cir.1986). This decision clearly sets out the inner relationship of this statute and that of the enabling statute, 34:204, which I have already cited. For example, at page 1034, and I quote, — remember folks when I quote I’ll be reading statutes that are not at issue here. They were at issue in their particular factual situation — ‘After considering the provisions of La.R.S. 33:1651 and La.R.S. 42:3, with the above rules in mind, we conclude that the statutes are not repugnant to each other. The provision in R.S. 33:1651 allowing for a two year term of office for treasurers is logically limited by the mandate in R.S. 42:3 that no officer of a police jury shall serve for a term longer than the term of office of the police jury which elected him. R.S. 42:3 clearly points out the reasoning behind such mandate, i.e., so that each police jury be given the freedom and flexibility to appoint its own officers and employees. Were R.S. 33:1651 strictly interpreted, disregarding the intent of R.S. 42:3, police juries or other municipal boards could be forced to continue in office officials and employees elected by prior boards whose ideas and goals were diametrically opposed to their own. Such a situation would only create ineffective and stagnant governing bodies. This is precisely what the legislature intended to *724 prevent through the enactment of R.S. 42:3. We therefore find that the two year term of office for treasures [sic] of police juries as set forth in R.S. 33:1651 is restricted by the provisions of R.S. 42:3. Thus, a treasurer of a police jury is generally entitled to serve a two year term so long as the police jury which elected him serves as long. Once the electing jury goes out of power, so necessarily does the treasurer. Therefore, in the instant case, when the new Police Jury took office on the first Monday in January, 1984, plaintiffs contract of employment with the Police Jury terminated. At this point in time, plaintiff no longer had a valid contract of employment with the Police Jury and could be terminated at the will of the incumbent Jury.’ This is consistent with the principle enunciated by our Supreme Court as far back as 1915 that the law of the land always enters into every contract entered into. Ehret v. Police Jury of the Parish of Jefferson, La., 136 So2d 391 (1915), at page 176 [136 La. 391, 67 So. 176]: ‘the law entered into the contract of employment and could not be avoided by the acts or omissions of the police jury. If it were otherwise, an incoming police jury might impose upon its successors in office a secretary who would be unacceptable to the new members and out of sympathy with the policy of the body.’
When, then, did the term of office of the membership of the Port Board which elected Plaintiff expire? At contract, the collective term of the Board was two years if we think of this as meaning prior to the end of the term of any commissioner that was serving. If this is what we accept, then the collective term of the hiring board would have expired December 11, 1986 when Mr. Noland went off. This would be ludicrous. Also absurd would be to say that because they have overlapping terms there is no expiration of membership terms. This would then make 42:3 meaningless. The only logical interpretation would be to look at the term of the majority of the electing board when you have an overlapping term situation. If you do this in our case, the term of the membership at contract extended through the term of the contract. If this is all we had, 42:3 would not be violated. This would satisfy the silent partner that sits on the right hand of Plaintiff which is equity because equity would have demanded this were this all we had. Unfortunately for Plaintiff that is not all we have. In 1988, for reasons that are well known, our legislature passed Act 351 which, effective September 15, 1988, abolished the hiring Board. This, in my opinion, mandated by the law of this state, triggered application of 42:3 which by operation of law and by reading same into the contract terminated Plaintiff’s contract effective September 15, 1988.”
OPINION
On appeal, neither party questions the trial court’s conclusion that plaintiff’s employment contract was valid at inception and was breached when he was terminated by the District, without cause, on May 2, 1988. Accepting these conclusions as established, this appeal presents the following issues:
1. Did plaintiff’s employment contract terminate by operation of law (La.R.S. 42:3) on September 15, 1988 with the adoption of Act 351 of 1988?
2. Was plaintiff’s employment contract with the District protected by the contract clauses of the United States and Louisiana constitutions?
3. Did the trial court err in rejecting plaintiff’s plea of equitable estoppel?
4. What is the proper measure of plaintiff’s damages?
DID PLAINTIFF’S EMPLOYMENT TERMINATE BY OPERATION OF LAW?
We have little difficulty in determining that R.S. 42:3 is applicable to plaintiff’s employment under the contract at issue. R.S. 42:3 is found within Chapter 1 of Title 42 which governs the terms of office or employment of public officers and public employees. It provides as follows:
*725 “The term of office of all employees or .officials elected by any state, district, parochial or municipal board shall not be for a longer period of time than the term of office of the membership of the board electing them so that each respective board shall elect its own officers and employees. This Section does not apply to the officers or employees of any board governed by a civil service law of this state or of any parish or municipality thereof.”
The District is clearly a “district” within the meaning of R.S. 42:3, as the statute creating it describes the District “as a political subdivision of the State”. Appellant, be he a public officer or a public employee of the District, is likewise subject, by the very terms of the statute, to the limitation of the term of office or employment prescribed therein. The contract of employment between appellant and the District, is deemed to have been entered into subject to the provisions of R.S. 42:3, and could not validly provide for a term beyond the term of office of the membership of the board electing or appointing him. Juneau v. Avoyelles Parish Police Jury, 482 So.2d 1022 (La.App. 3rd Cir.1986).
Appellant does not question the validity of Act 351 of 1988 or the authority of the legislature to enact same. As aforementioned, that act, in specific terms, terminated the terms of office of the then members of the board of commissioners of the District, effective September 15, 1988. Therefore, the terms of office of all members of the board of commissioners who appointed or elected appellant as port director, being terminated effective September 15, 1988, appellant’s term of employment could not validly extend beyond that date. Accordingly, we conclude that the trial court correctly determined that plaintiffs employment as port director terminated by operation of law on September 15, 1988.
IS PLAINTIFF’S EMPLOYMENT CONTRACT CONSTITUTIONALLY PROTECTED?
Plaintiff next contends that the state cannot, by statute, retroactively terminate an otherwise valid enforceable contract. In support of this contention, appellant relies on La. Const. Art. I, Sec. 23 and United States Const. Art. I, Sec. 10, both of which provide that no state shall pass any law impairing the obligation of contract. The trial judge found no merit in this contention for the following articulated reasons:
“Plaintiff argues this contravenes his constitutional rights against impairment of vested contractual rights. This was answered long ago in the case of Higginbotham v. City of Baton Rouge, La., 190 So2d 821 (1938), at page 170:[1] ‘Our opinion is that the present case is governed by the doctrine of Newton vs Board of Commissioners [100 U.S. 548, 25 L.Ed. 710], and not by the decision in Hall vs Wisconsin [103 U.S. 5, 26 L.Ed. 302]. The position in which Powers Higginbotham was employed was in the nature of a public office, in that the duties and functions of the employee were governmental or administrative duties and functions’. Paraphrasing, the Court went on to say with reference to the so called commissioners employed in the opposite situation, that their duties were specifically defined, they were of scientific character, and although called commissioners they were not governmental or administrative in any sense. They were just such functions or duties as any surveyor would have had to perform if their contract had been made with an individual. Newton held that the contract clause in the constitution had application only to cases where the state laid aside her sovereignty and entered into a contract such as an individual might enter into. Reading on down, at page 171, ‘the principle laid down (in the Dartmouth College Case [Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629]), and since maintained in the cases which have followed and (have) been controlled by it, has no application where the statute in question is a public law relating to a public subject *726 within the domain of the general legislative power of the state and involving the public rights and public welfare of the entire community affected by it’. The Court explains that the contract clause in the constitution is not applicable to contracts of employment of persons to perform governmental functions because the legislature is forbidden to make an irrevocable surrender of any of the police power of the state. It is so declared in the constitution. It is so declared in our constitution that the exercise of the police power of the state shall never be abridged. And hence, the contract clause in the constitution cannot in any way abridge a clause of equal standing and footage in the same constitution preventing a surrender of police power.”
The learned trial judge then determined that, as port director, appellant was clearly performing a governmental function and, therefore, the constitutional provisions relied upon were without application in light of Higginbotham.
Our careful review of the record reveals no error in this conclusion. The legal principle espoused in Higginbotham is well settled and the record clearly supports the trial court’s conclusion that appellant’s employment as port director required his performance of a governmental function involving public rights and public welfare within the territorial limits of the district.
EQUITABLE ESTOPPEL
Andrepont additionally contends that even if Act 351 of 1988 and La.R.S. 42:3 operate to terminate his contract as of September 15, 1988, the doctrine of equitable estoppel should be invoked to provide plaintiff damages for breach of contract through the original contract term.
La.C.C. art. 1 provides that legislation and custom are the sources of law.[2] Only “[w]hen no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity”.[3] La.C.C. art. 4.
It is clear that equity cannot be invoked to abrogate positive law. Appellant’s contention has no merit.
THE PROPER MEASURE OF PLAINTIFF’S DAMAGES
The trial court awarded plaintiff his salary, prorated from May 2, 1988 until September 15, 1988, the date the contract terminated. To determine the proper amount of the award, the trial court relied upon La.C.C. art. 2749 which provides as follows:
“If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time,* before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.”
The trial court relied upon the interpretation of this article as enunciated in Brasher v. Chenille, 251 So.2d 824 (La.App. 3rd Cir.1971) and Desonier v. Golden Gulf Marine Operators, Inc., 474 So.2d 1314 (La.App. 5th Cir.1985), writ denied, 476 So.2d 336 (La.1985). This court held in Brasher that:
“We are constrained to hold that since this is a penal statute and must be strictly construed, the word ‘salaries’ does not include any amount which the employer agreed to pay for retirement or pension plans ...”
Andrepont not only claims entitlement to his salary through the end of the original contract term, but also makes a claim for retirement benefits. This court held in Brasher that pension payments are not within the purview of this code article. Accordingly, we find that Andrepont’s claim for retirement benefits is without merit.
*727 For these reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. The correct citation is 190 La. 821, 183 So. 168 (1938).

. The provision of La.C.C. art. 1 was added in 1988, however, La.C.C. Arts. 1 and 3 of 1870 make clear that legislation and custom are the sources of law in Louisiana. La.C.C. art. 1, Revision Comment (a).

. This provision was amended in 1988 and reproduces the substance of Art. 21 of the Code of 1870. It does not change the law. La.C.C. art. 4, Revision Comment (a).