602 So.2d 704 (1992)
J. Burton ANDREPONT
v.
LAKE CHARLES HARBOR and TERMINAL DISTRICT.
No. 91-C-2521.
Supreme Court of Louisiana.
May 26, 1992.
*705 Mack E. Barham, Robert E. Arceneaux, Lee Ann Archer, Suzanne B. Bagert, Barham and Markle, New Orleans, Raleigh Newman, Lake Charles, for applicant.
James Eugene Williams, Edward K. Alexander, Jr., Woodley, Williams, Fenet, Palmer, Boudreau & Norman, Lake Charles, for respondent.
CALOGERO, Chief Justice.
Plaintiff, J. Burton Andrepont, seeks damages for loss of salary, and employer retirement contributions or pension benefits, arising out of his alleged wrongful termination by defendant, Lake Charles Harbor and Terminal District (hereinafter, Dock Board). The lower courts found that defendant breached an employment contract without cause and awarded plaintiff damages for loss of salary from the time of breach until the Legislature shortly thereafter amended La.R.S. 34:202 to abolish the existing Dock Board and create a new one.
We granted plaintiff's writ to determine whether the lower courts properly denied recovery for the full salary and employer retirement contributions (or alternatively retirement benefits) that plaintiff would have received, or had the benefit of, if the contract had not been breached. For the reasons expressed hereafter, we reverse the judgment of the court of appeal and find that plaintiff is entitled to compensation for his loss of salary and recovery of an additional sum to compensate him for his losses relative to the Louisiana State Employees' Retirement System. We remand to the district court for determination of the specific amount of those monetary damages.
On September 15, 1986, plaintiff entered into a four year contract with the Lake Charles Dock Board. He continued as Port Director until May 2, 1988, when he was terminated by the Board. A month later, plaintiff filed suit in the district court, claiming that he was wrongfully terminated. He sought compensatory damages in the amount of the salary he would have received, and the retirement benefits to which he would have been entitled, if the remainder of the four year contract had been honored. While the lawsuit was pending, the Legislature passed Act 351 of 1988 which, effective September 15, 1988, amended La.R.S. 34:202 to abolish the existing Dock Board, create a new one, and provide for appointments to the new Board. Defendant contends, and the courts below found, that this legislative action had the effect of terminating plaintiff's contract as of September 15, 1988, and that the plaintiff could therefore recover damages only for the period between the breach of the contract and the effective date of the Legislature's amendment of the statute. Plaintiff contends that the Legislature's amendment and reenactment of La.R.S. 34:202, whatever its effect, cannot be applied retroactively so as to affect his contractual rights.
The district court found that the contract was legal and enforceable at its inception, and that the Dock Board had terminated the contract without cause when the Board fired Andrepont on May 2, 1988. The court further held, however, that the 1988 amendment to La.R.S. 34:202 was subject to La.R.S. 42:3 (which provides that the term of office of an employee of a state or local board cannot be longer than the electing board's term), and that the Legislature's termination of the existing Board and appointment of members to a new Board resulted in a legal termination of Andrepont's contract on September 15, 1988. Thus, the trial court awarded plaintiff damages in the amount of his salary, but only for the period May 2, 1988, through September 15, 1988. The court of *706 appeal affirmed. 586 So.2d 722. Andrepont now asks this court to review the rulings of the lower courts and to award damages through September 15, 1990, the concluding date of the four year contract, for his salary and his losses relative to the Louisiana State Employees' Retirement System.
A principal question at issue is whether the Legislature's amendment of La.R.S. 34:202 affects the damages to which Andrepont is entitled as a result of the Dock Board's breach of contract. In finding that the contract was valid at its inception, the lower courts determined that the contract did not violate the provisions of La.R.S. 42:3 when Andrepont contracted with the Dock Board for a four year term as Port Director. That statute provides:
The terms of office of all employees or officials elected by any state, district, parochial, or municipal board shall not be for a longer period of time than the term of office of the membership of the board electing them so that each respective board shall elect its own officers and employees.
Since each member of the Dock Board was appointed to a six year term of office, since the majority of the board members had more than four years remaining in their respective terms at the time of Andrepont's initial employment, and since the average time remaining in the board members' staggered terms was greater than four years, Andrepont's four year contract term was within the prescribed statutory limit. Whether the "term of office of the membership of the board" is interpreted as the six year term for which each Dock Board member is initially appointed, or the average time remaining in their terms when a contract is confected, or the length of time remaining in the majority of the board members' terms at a contract's inception, plaintiff's four year contract did not violate La.R.S. 42:3. We agree therefore that the contract was valid at its inception because it was not for a term longer than the board members' terms.
However, on September 15, 1988, the amendment to La.R.S. 34:202, which created a new Dock Board while disbanding the Board which had hired Andrepont for the position of Port Director, came into effect. This legislation was allegedly passed because federal extortion indictments had been brought against three of the original board members. Termination of Andrepont's contract was apparently not what the legislation set out to accomplish in creating a new Board. Although La.R.S. 42:3 does evidence a policy of permitting each public board to elect its own officers and employees, the statute does not address the situation where a board's term is "shortened" by legislative abolition. In the absence of the Legislature's intending to terminate Andrepont's contract, this court will not find that the relevant legislative amendment served to divest Andrepont of his rights under the contract. Plaintiff is therefore entitled to damages through September 15, 1990, the end of his contract term. Because we find that the Legislature's amendment of La.R.S. 34:202 did not terminate Andrepont's contract or legally divest him of any rights under the contract, we find it unnecessary to address, or to resolve, a possibly more troublesome question, that is, whether legislative abrogation of a state agency's contract would offend the contract clauses of the federal and state constitutions and violate the contracting party's corresponding constitutional rights.
Since plaintiff is entitled to damages for the full term of the contract, it becomes necessary for us to determine the extent of those damages under the applicable law. Article 2749 of the Louisiana Civil Code addresses an employer's liability for terminating an employee with a fixed term contract without cause. It provides:
If, without any serious grounds of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
An employer's breach of a fixed term contract without cause results in the employee's *707 entitlement to compensation for all wages or salary that he would have received but for the breach. Carlson v. Ewing, 54 So.2d 414 (La.1951); Shoemaker v. Bryan, 12 La.Ann. 697 (1857); Sherburne v. Orleans Cotton Press, 15 La. 360 (1840); Roussel v. Blanchard & Co., 430 So.2d 247, 249 (La.App. 4th Cir.1983). The Dock Board has not protested the trial court's finding that Andrepont's termination was without cause. They simply rely, for defense, on the contention that the Legislature's creation of a new Board, coupled with La.R.S. 42:3's prohibition against state agency contracts for terms longer than the board members' terms, legally terminated Andrepont's contract approximately four months after the Dock Board discharged him without cause. The lower courts accepted that position and found therefore that Andrepont was entitled only to recover damages in the amount of his salary for those few months. Because we have determined that the amendment of that statute did not effect the termination of Andrepont's contract, he is entitled to compensation, as well, in the full amount of his salary for the remaining portion of the four year contract period (to September 15, 1990).
Of course, there is no duty to mitigate lost salary damages in these circumstances. See La.Civ.Code Ann. art. 2749 (West 1952); Carlson v. Ewing, 54 So.2d at 421; Shea v. Schlatre, 1 Rob. 319 (1842); Turner v. Winn Dixie Louisiana, Inc., 474 So.2d 966 (La.App. 5th Cir.1985). Plaintiff's damages for loss of salary are therefore not reduced by any amounts that he may have earned between termination and expiration of the contract period. Defendant cannot successfully maintain that these damages should be reduced because Andrepont could have or should have sought other employment.
In response to plaintiff's claim for damages regarding his prospective retirement rights, the Dock Board contends that Andrepont is not entitled to any such damages, because recoverable damages are only as specified in Article 2749, that is, "the whole of the salaries" alone. In contrast, plaintiff contends that recovery for his losses pertaining to retirement rights is not barred by Article 2749. Plaintiff asks this court to rule that the Dock Board must pay monetary damages to Andrepont in the amount necessary to compensate him for his losses relative to the Louisiana State Employees' Retirement System.
There is very little jurisprudence in Louisiana which addresses the question of a plaintiff's ability to recover retirement contributions, or benefits, because of an employer's breach of a fixed term contract. In Brasher v. Chenille, Inc., 251 So.2d 824, 827 (La.App. 3rd Cir.1971), the third circuit court of appeal determined that future retirement contributions were not recoverable under Article 2749 because the word "salaries" should be strictly construed so as to exclude "fringe benefits" such as contributions to retirement plans.
In order to ascertain the meaning of the word "salaries" in Article 2749, an examination of the statute's history is helpful. The statute originated in slightly different form in the Projet du Gouvernment in the year 1800.[1] In 1808, the statute was placed in the Louisiana Civil Code;[2] in the 1825 Civil Code, the provision was amended and reenacted in its present form.[3] When the statute was originally enacted nearly *708 200 years ago, the word "salary" possibly was intended to mean only a laborer's wages paid on a daily, weekly, or other regular basis. At that time, the only compensation which was bargained for under a contract for services was likely to have been wages.
However, over the years, retirement contributions and benefits have come to represent an increasingly important part of an employee's compensation for his services. As a result, many courts, in a variety of factual settings, have determined that pension benefits constitute deferred compensation for services. Hare v. Hodgins, 586 So.2d 118, 122 (La.1991) (partition of community property); Robert C.S. v. Barbara J.S., 434 A.2d 383 (Del.1981) (divorce); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 851 (La.1976) (succession); Taylor v. Multnomah County Deputy Sheriff's Retirement Bd., 265 Or. 445, 510 P.2d 339 (1973) (deputy sheriff's participation in retirement plan); Hanson v. City of Idaho Falls, 92 Idaho 512, 446 P.2d 634 (1968) (policemen's retirement fund). In T.L. James, on rehearing, this court stated that "[t]he contribution of the employer into these [profit-sharing and retirement] plans is not a purely gratuitous act, but it is in the nature of additional remuneration to the employee who meets the conditions of the plan.... The credits to these plans, when made, are in the nature of compensation (although deferred until contractually payable)." T.L. James, 332 So.2d at 851. Thus, there is ample support for finding that contributions to retirement plans are among the emoluments of employment and can be considered deferred compensation or "salaries." We therefore tend to disagree with the Brasher court's restrictive interpretation of "salaries" in Article 2749. Nonetheless, we find it unnecessary to overrule that decision expressly at this time for the reasons expressed hereafter regarding the applicability of the general obligations provisions of the Civil Code.
In addition to his entitlement to damages for lost wages under Article 2749, plaintiff contends that general obligations law is also applicable and provides for recovery of lost employer retirement contributions, or pension benefits. The obligations articles provide for the recovery of all damages caused by the obligor's failure to perform,[4] which plaintiff contends includes contributions to the State Employees' Retirement System, contemplated but not deposited by the defaulting employer, or retirement benefits which would have come into being in due course but for the employer's breach. Defendant contends, however, that general obligations articles are not available to supplement Article 2749.
Although Article 2749 is somewhat restrictive, that article does not bar a plaintiff from bringing claims for other kinds of damages under any other applicable provisions of law. In Bartlett v. Doctors Hospital of Tioga, 422 So.2d 660 (La.App.3d Cir. 1982), writ denied, 427 So.2d 869 (La.1983), the third circuit court of appeal found that an employee discharged without cause could sue for relief under both Article 2749 for future salaries, and La.R.S. 23:631 et seq. for wages due at the termination of his employment, with penalties and attorney fees.
In addition, general obligations provisions have been applied by this court in at least one case, like this one, involving the breach of a fixed term employment contract. Giron v. Housing Auth. of City of Opelousas, 393 So.2d 1267 (La.1981). In Giron, the plaintiff brought claims for injunctive relief and, in the alternative, monetary damages, because the employer breached a five year contract without cause. The court awarded damages under La.C.C. arts. 1926-1927,[5] which were the *709 general obligation provisions in effect at that time. In another wrongful discharge case, Duhon v. Slickline, Inc., 449 So.2d 1147 (La.App. 3rd Cir.), writ denied 452 So.2d 172 (La.1984), the third circuit court of appeal, relying on this court's decision in Giron, ordered reinstatement of an employee with a fixed term contract and awarded damages in the amount of back pay and benefits.[6] Thus, the general obligations articles provide additional remedies available to an aggrieved employee whose contract is breached without cause.[7]
Although this court stated in Carlson v. Ewing, 54 So.2d 414 (La.1951), that the general obligations article relating to measurement of damages did not extend to breach of contract in an employee-employer relationship because Article 2749 specifically provides for damages in cases of wrongful discharge, that case is distinguishable. In Carlson, this court concluded that Article 2749 prevails over general obligations provisions, but only in the context of a wrongfully discharged employee's duty to mitigate damages. In that employer is obligated to pay "the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived," Louisiana courts "... have repeatedly held that the fact that [an] employee may elsewhere earn money during the unexpired term of the contract has no bearing on his right to recover his salary for the said unexpired term." Id. 54 So.2d at 421.
In contrast, incidentally, there is an offsetting mitigation of damages under the general obligations provisions. La.Civ. Code Ann. art. 2002 (West 1987); Moyse v. Runnels School, Inc., 457 So.2d 767 (La. App. 1st Cir.1984); Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc., 430 So.2d 696 (La.App. 2d Cir.1983). Although the court in Carlson correctly found Article 2749, the more specific statute, to be controlling on the limited question of the duty to mitigate damages, that case does not stand for the proposition that Article 2749 prevails in all regards concerning wrongful termination of a fixed term contract. In particular, the statute is not controlling with regard to the matter of other damages not specifically addressed by Article 2749, that is, damages other than "salaries."
In the present case, the Dock Board has failed to perform its obligations under the contract. Article 1994 of the Louisiana Civil Code provides:
An obligor is liable for the damages caused by his failure to perform a conventional obligation.
A failure to perform results from nonperformance, defective performance, or delay in performance.
With regard to damages, Article 1996 of the Louisiana Civil Code provides that "[a]n obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made." Article 1996 of the Louisiana Civil Code further provides that "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." In the present case, it is unnecessary to determine whether the Dock Board acted in good or bad faith in breaching the employment contract because Andrepont's loss of the benefit of employer retirement contributions, and resulting injury, were clearly foreseeable at the time *710 of the breach. Those benefits were a primary concern of Andrepont's in bargaining for the four year contract[8] and the Dock Board must compensate him for his loss.
In support of our determination, we note that a number of other jurisdictions and federal courts have found that employees who are illegally discharged are entitled to recover for lost retirement contributions, or corresponding pension benefits. Blum v. Witco Chemical Corp., 829 F.2d 367 (3rd Cir.1987) (lost pension benefits recoverable as front pay under the Age Discrimination in Employment Act of 1967, §§ 2-17, as amended, 29 U.S.C.A. §§ 621-634); Hittle v. Santa Barbara County Employees Retirement Ass'n., 703 P.2d 73 (Cal.1985); Lukasik v. Riddell, Inc., 116 Ill.App.3d 339, 72 Ill.Dec. 123, 452 N.E.2d 55 (1983); Freund v. Laendenbank Wien Aktiengesellschaft, 111 N.Y.S.2d 178 (Sup.Ct.1949), aff'd 277 A.D. 770, 97 N.Y.S.2d 549 (App. 1950); Wilson v. Rudolph Wurlitzer Co., 48 Ohio App. 450, 194 N.E. 441 (1934). As stated in Blum, "[p]ension benefits, unlike lesser fringe benefits, are an integral part of an employee's compensation package, and indeed are generally referred to as deferred compensation. Because of the paramount importance of pension benefits to an employee's future financial security, it would be unfair to exclude them from a calculation of front pay." Blum, 829 F.2d at 375.
In determining the extent of plaintiff's damages, the Dock Board should surely be denied at least the monetary benefit that it reaped by desisting from performing. That coincides with what Andrepont seeks here, that is, salary and employer retirement contributions. This case would perhaps be more difficult if the plaintiff were seeking to have the Dock Board burdened with pension obligations, or if he were asking us to cast the Louisiana State Employees' Retirement System (not a defendant herein) for his retirement benefits. However, plaintiff's counsel conceded in oral argument that Andrepont, in this suit, merely seeks recovery of the contributions that would have been made by the Dock Board to the State Retirement System on his behalf, as well as interest on those employer contributions. Plaintiff apparently intends to present those monetary contributions, plus interest, actuarial cost, or some counterpart, and corresponding employee contributions, plus interest, actuarial cost, or some counterpart, to the State Employees' Retirement System with a request that the System credit his retirement account appropriately.
We find that the Dock Board is liable to plaintiff for the contributions to the Louisiana State Employees' Retirement System that the Board would have made on the plaintiff's behalf for the period of May 2, 1988, until September 15, 1990, had it not discharged him without cause. The lower courts relied on the third circuit court of appeal's determination in Brasher, 251 So.2d 824, and denied plaintiff any recovery for retirement loss damages. For that reason, the lower courts did not reach the question of the monetary amount of plaintiff's retirement losses. We find, however, that plaintiff is entitled to recover for retirement losses, so the question of the amount of those losses must now be addressed. Because this issue has not previously been considered by the lower courts, and because it is a complicated question, perhaps with the need for submission of additional evidence, we will remand to the trial court to resolve this matter, as well as the monetary amount of plaintiff's lost wages.
This determination is complicated because it seems that the Dock Board should at least be required to pay the employer contributions which it would have made on plaintiff's behalf, but for its breach, plus appropriate legal interest, probably from the dates when those employer contributions would have been due. On the other hand, especially since this issue has not previously been addressed (nor briefed in *711 this court), we are not so sure that some other formula might not more appropriately be applied. For instance, assuming plaintiff succeeds in getting the Louisiana State Employees' Retirement System to credit him with state service for May 2, 1988, until September 15, 1990, he will be confronted with having to fund that period of service. That amount might be calculated in accordance with the La.R.S. 11:158(C) (which provides for purchase of service credit in the System), and it might be appropriate for the district court to ascertain plaintiff's retirement loss damages as that corresponding sum (assuming the court is able to determine the amount due under the appropriate statute), less the portion of that sum which is equal to the employee's contribution obligation. On the other hand, the district court may determine that, rather than actuarial cost to the System under La.R.S. 11:158(C), the resolution should be more akin to interest at a board approved actuarial rate, a formula alluded to in La. R.S. 11:423(C) and La.R.S. 11:425(B) and (C).
Determining the monetary amount of plaintiff's retirement losses will not be a simple matter, but the defendant's obligation is to make the plaintiff whole. Whether that can best be accomplished by adding legal interest to the employer contributions from the dates when those respective contributions were due, or in some other manner, is for the parties to argue and the district court to decide. In addition, in determining plaintiff's monetary damages regarding salary and retirement losses, plus interest, actuarial cost, or some counterpart thereto, the district court should consider whether plaintiff has lost any retirement benefits, or sums, which he would have received as a retiree in the period between September 15, 1990, and the date of the trial court's judgment on remand.[9]
Of course, damages may be mitigated under the general obligations provisions of the Civil Code and it is conceivable that plaintiff obtained, or could have obtained, other employment subsequent to his termination by the Dock Board. It is unlikely that plaintiff secured state employment at a comparable salary for a sufficient number of years to become vested in the System, or employment with another employer sufficient to obtain pension benefits. That inquiry, however, is one that the district court should make on remand, because this issue has not been briefed to this court, or previously considered by the lower courts, and we cannot ascertain from this record whether mitigation took place. Therefore, on remand regarding the amount of damages, the district court should examine evidence to determine whether any mitigation occurred with regard to plaintiff s "retirement loss" damages.
This case will be remanded to the district court to take evidence, if necessary, and to fix the damages to which plaintiff is entitled, which shall include Andrepont's loss of salary, the Dock Board's share of retirement contributions, and whatever additional amount[10] is required to fully compensate plaintiff for his losses relative to the retirement plan.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and this case is remanded to the district court.
REVERSED; REMANDED TO THE DISTRICT COURT
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Plaintiff's employment contract was valid at the time of execution. When the *712 Board breached the contract, plaintiff was entitled to the damages sustained on account of the breach, and the legislative action after the breach did not affect the validity of the original contract or the Board's liability for the full amount of damages for breaching that contract.
Furthermore, pension benefits, which constitute partial remuneration for the employee's performance of employment services, should be included within the term "the whole of the salaries" in La.Civ.Code art. 2749.
NOTES
[1] In the Projet du Gouvernment, Book III, Title XIII, art. 114 (1800), the article read as follows:

If, without any just ground of complaint, a master should send away a servant or laborer before the time agreed on, he shall be bound to pay said servant or laborer the whole of the salary of the year, or period for which he had been hired, deducting the wages which the servant or laborer is likely to earn elsewhere, during that part of the time which has not expired.
The original article differed from the more recent versions in that it required an offset for wages which the laborer was likely to earn elsewhere.
[2] See La.Civ.Code of 1808, art. 59, p. 382. Article 59 of the 1808 Louisiana Civil Code was largely the same as the Projet version except that it deleted any reference to deductions for wages that the laborer might earn elsewhere.
[3] See La.Civ.Code art. 2720 (1825); La.Rev.Civ. Code art. 2749 (1870).
[4] See La.Civ.Code Ann. arts. 1994 et seq. (West 1987).
[5] Article 1926 of the 1870 Louisiana Civil Code stated:

On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.
Article 1927 of the 1870 Louisiana Civil Code stated:
In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.
[6] The types of benefits are not specified in the court's published opinion, except to say that the plaintiff's contract provided for "... all benefits payable to the president." Duhon, 449 So.2d at 1149, 1153.
[7] In fact, West's 1992 edition of the Louisiana Civil Code, as edited by A.N. Yiannopoulos, specifically provides cross-references from Article 2749 to general obligations articles (e.g., La.Civ. Code art. 1758 (general effects of obligations); La.Civ.Code art.1986 (obligee's right to specific performance or damages)), and other statutory provisions (such as Louisiana Revised Statute 23:631, which provides for recovery of wages due at the time of termination).
[8] Plaintiff had previously served in the Louisiana Legislature. When he contracted with the Dock Board as Port Director, he needed approximately three and a half years of additional state service in order to qualify for retirement benefits in the Louisiana State Employees' Retirement System.
[9] According to La.R.S. 11:441(A)(3), a member of the Louisiana State Employees' Retirement System is eligible for retirement if he has "[t]en years or more of service, at age sixty or thereafter." As a matter of information, plaintiff's sixtieth birthday fell on May 17, 1990. He apparently would have had the required years of state service when the contract term expired on September 15, 1990, making him eligible for retirement at that time.
[10] This additional amount shall include interest, actuarial cost, or some appropriate counterpart, and possibly any sums that plaintiff would have received as a retiree after September 15, 1990.