449 So.2d 1147 (1984)
Gus DUHON, Plaintiff-Appellee,
v.
SLICKLINE, INC., Guy A. Duhon and Keith M. Duhon, Defendants-Appellants.
No. 83-626.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
Writ Denied June 8, 1984.
*1148 Edwards, Stefanski & Barousse, Homer Ed Barousse, Jr., Crowley, for plaintiff-appellee.
Lynn A. DeRouen, New Iberia, for defendants-appellants.
Before GUIDRY, FORET and CULPEPPER,[*] JJ.
GUIDRY, Judge.
The plaintiff, Gus Duhon, brought this suit seeking to be recognized as owner of 25% of the stock in the defendant corporation, Slickline, Inc. Also made defendants are the plaintiff's sons, Guy Duhon and Keith Duhon, the record owners of one-third each of the outstanding issued stock of Slickline, Inc. The plaintiff further contends that he was wrongfully dismissed from his employment with Slickline, Inc., and seeks to be reinstated in his former position, along with accrued salary and *1149 benefits. The trial court rendered judgment for plaintiff ordering the defendants to deliver 25% of the stock in Slickline, Inc. to the plaintiff. The trial court further ordered that the plaintiff be reinstated in his employment with the corporation, along with full back salary and benefits. The defendants have appealed.
The issues presented are: (1) whether the trial court was correct in determining that a $40,000.00 check delivered by the plaintiff to the defendants was given in payment for a one-fourth interest in the stock of Slickline, Inc.; (2) whether the court could properly order the transfer of stock from the defendants to the plaintiff; and, (3) whether the trial court was correct in finding that the plaintiff was wrongfully dismissed from his employment with Slickline, Inc.

FACTS
In 1978, Guy and Keith Duhon approached the plaintiff to discuss the possibility of forming an oilfield service company specializing in wireline work. The corporation, Slickline, Inc., was formed on February 21, 1979. On February 28, 1979, the plaintiff delivered to Guy and Keith a check in the amount of $40,000.00. Guy and Keith endorsed the check and deposited the funds into the account of Slickline, Inc. The corporate stock of Slickline, Inc. was issued to Guy, Keith and a third son, Kim Duhon, one-third to each.
Guy and Keith testified that the $40,000.00 check was a donation given to help them get the company started. They stated that their father told them that it was not necessary to pay the money back. They admit that the money was given with the understanding that it was to be used in the establishment of Slickline, Inc. However, they deny that there was any reciprocal agreement to transfer stock to their father in consideration of the $40,000.00 check. It was stipulated at trial that, had Kim Duhon been called as a witness, his testimony would have been in accord with that of Guy and Keith.
The plaintiff, Gus Duhon, testified that the money in question was given to secure a one-fourth (25%) share in the corporate stock. He stated that the corporate stock was to be divided equally among Guy, Keith, Kim and himself. The plaintiff stated that the one-fourth share he was to receive was to eventually go to a fourth son, Chad Duhon, to insure his place in the family business. Chad was to receive his share from the plaintiff upon attaining majority.
The testimony was also in conflict with regard to the plaintiff's performance under the employment contract. The contract was entered into on March 10, 1981, and was signed by the plaintiff and by Guy Duhon as president of the corporation. The contract was for a term of ten years. The contract further provided that the plaintiff would receive a salary equal to that of the president of Slickline, Inc., including all benefits payable to the president. Paragraph 3 of the contract lists the duties of the plaintiff, stating: "The services to be rendered are Chairman of the Board, Advisor, and items actually related thereto, including supervision on jobs." The testimony taken at trial also established that, when the plaintiff was hired by Slickline, Inc., it was understood that, as part of his job duties, the plaintiff would be expected to do sales work in addition to his advisory and supervisory duties.[1]
The plaintiff was terminated from his position with Slickline, Inc. on March 2, 1982. Guy Duhon testified that his father's dismissal resulted from his failure to *1150 perform job duties. In particular, Guy stated that the plaintiff failed to make sales calls, that he was difficult to locate at times despite the fact that he kept a "beeper"; and, that he had refused a promising job offered by a potential customer. He stated that the customer's business had been actively courted by Slickline, Inc. and that the plaintiff, unbeknownst to Guy and Keith, refused to accept the job, despite Slickline's capability to perform the job.
Keith Duhon likewise testified that the plaintiff failed to fulfill his job duties with regard to sales, stating that the plaintiff made no sales calls to speak of during the three month's prior to his dismissal. He also testified that the plaintiff improvidently allowed an inexperienced employee to operate certain equipment on an offshore drilling platform, resulting in the loss of $7,500.00 to $10,000.00 worth of tools. Keith also corroborated Guy's testimony that the plaintiff was at times difficult to locate when needed. Both defendants also testified regarding an incident which occurred during a meeting they had with their father. The plaintiff was apparently disturbed over the fact that his son, Guy, had grown a beard. According to Guy and Keith, the plaintiff flatly refused to do any sales work until Guy shaved the beard. According to Keith, it was at this point that the two Duhon sons decided to terminate the plaintiff's employment with Slickline, Inc.
The plaintiff testified that he had his attorney draw up the employment contract when problems began to develop between him and his sons. The contract as originally drafted stated, "The services to be rendered are Chairman of the Board, Advisor, and items actually related thereto." At the insistence of Guy, the words "including supervision on jobs" were added. The plaintiff and Guy signed the employment contract as amended.
The plaintiff's testimony with regard to the scope of his job duties was in accord with that of his sons. He stated that all three men shared like responsibilities, including sales, building units, going offshore when necessary, and in general staying available at all times.[2] The plaintiff stated that he was in fact available twenty-four hours a day, that he went offshore whenever his presence was needed, and that he fulfilled all his duties with regard to rendering advice and supervision.
The plaintiff's version of the incident concerning Guy's beard differs slightly from that related by his sons. The plaintiff testified that he expressed concern over Guy's beard and the fact that in turn the company's employees began to grow long hair and beards. The plaintiff felt that the appearance of the employees was not presentable, making it more difficult to attract new customers. The trial transcript of the plaintiff's testimony on cross examination contains the following exchange:
"Q. Did you ever tell Keith or Guy or Kim or all of them at a meeting that if there weren't some changes made, if there weren't some people shaping up in terms of getting their faces shaved, et cetera, that things just weren't going to be the same way they would have been before? You weren't going to do all the sales work and go to the trouble that you had gone to before if they didn't shape up? Is that it?
A. Yes, sir."
The remainder of the plaintiff's testimony differs from that of his sons. With regard to the alleged refusal by the plaintiff of a promising job offer by a potential customer, the plaintiff denied any knowledge of such an offer. Concerning the loss of tools caused by the inexperienced employee, the plaintiff stated that he felt the employee, who had worked for Slickline, Inc. for six months, should have been qualified to perform the task assigned to him. He further hinted that any lack of experience on the employee's part was due to a *1151 lack of proper training attributable to the company. He stated that any employee who had been on the job for six months should have had the requisite experience and training to perform the job being performed by the employee when the tools were lost.

THE STOCK AGREEMENT
The trial judge found that the $40,000.00 check delivered to the defendants by the plaintiff was intended to secure a 25% share of the corporate stock of Slickline, Inc. In doing so, he accepted the version of the agreement testified to by the plaintiff and rejected that attested to by the defendants.
The trial court is in the best position to assess the credibility of witnesses. Reasonable evaluations of credibility and reasonable findings of fact should not be disturbed on appellate review unless they are clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975), writ refused, 310 So.2d 641 (La. 1975). It is also well established that witnesses are weighed and not counted, and the weight to be given evidence is not determined by the number of witnesses.
Our careful review of the record reveals no clear error in the trial judge's factual determination that the parties agreed to a transfer of stock to the plaintiff. The record is devoid of any evidence, other than the testimony of the defendants, to show that such was not the agreement between the parties. Because the resolution of this issue depended solely on the credibility of the competing parties, we will not disturb the factual finding of the trial court.

THE PLAINTIFF'S REMEDY
We do find it necessary, however, to amend that portion of the trial court judgment which orders the defendants to transfer 25% of the corporate stock of Slickline, Inc. to the plaintiff. This is made necessary by the provisions of the Articles of Incorporation, which prohibit such a transfer of corporate stock.
Article XXI of the Articles of Incorporation of Slickline, Inc. provides, in pertinent part:
"Unless the shareholder has previously obtained approval in writing from the holders of three-fourths of the issued stock of this corporation, such shareholders may not sell, donate, pledge, or in anywise transfer any stock of this corporation without first offering the same for sale, to all of the other shareholders owning stock, at the book value thereof, as shown by the last preceding financial statement of this corporation.
. . . .
No sale, donation, pledge or transfer of any of the stock of this corporation shall be valid and binding until and unless opportunity to purchase such shares has been given in the matter in this article provided; and this right so vested in the shareholder, shall follow any of the stock of the corporation into any hands into which it may pass, without such opportunity being given...."
Mandamus is a proper remedy to compel a corporation to transfer shares of stock on the corporate books and to issue a proper certificate to the owner where there is no real dispute as to ownership and where the transfer has been made in accordance with the conditions of the Articles of Incorporation. State ex rel. Jurgens v. Consumers' Brewing Co., 115 La. 782, 40 So. 45 (1905).
The record in the instant case establishes that the corporate stock of Slickline, Inc. was issued to Guy Duhon, Keith Duhon and Kim Duhon, one-third to each. There is nothing in the record to indicate that the written approval required by Article XXI was ever secured from Kim Duhon prior to the agreement by Guy and Keith Duhon to transfer the 25% share of corporate stock to the plaintiff. Likewise, there is nothing to indicate that the stock was ever offered to Kim Duhon prior to said *1152 agreement. Kim Duhon was not made a party to this suit. Under these circumstances, it is clear that the agreement to transfer stock to the plaintiff was not accomplished in accordance with the mandatory provisions of the Articles of Incorporation, and mandamus will not lie to compel the transfer.
It is also observed that the order of the trial court compelling the transfer was itself a violation of Article XXI, since none of the prerequisites for the transfer of corporate stock were fulfilled. Kim Duhon, the record owner of one-third of the corporate stock, has pre-emptive rights established by Article XXI which would be clearly violated by such an order.
Since the transfer of stock to the plaintiff may not be accomplished, the consideration for plaintiff's $40,000.00 investment has failed. Under these circumstances, the plaintiff's only remedy is to have the funds returned to him. Thus, we will amend the trial court's judgment in order to compel the return of the plaintiff's $40,000.00 with interest.

THE EMPLOYMENT CONTRACT
The trial court found that the plaintiff was wrongfully dismissed from his position with Slickline, Inc. In his written reasons for judgment, the trial judge stated that the incidents upon which the defendants rely to establish cause for the dismissal were minor. He found that the plaintiff adequately and substantially performed all of the duties incumbent upon him under the employment contract.
As we have previously stated, the factual determinations of the trial court are entitled to great weight. Canter v. Koehring Company, supra. We find no clear error in the trial court's finding that the plaintiff's dismissal was without cause.
The defendants rely heavily on the "ultimatum" delivered by the plaintiff to the defendants, wherein he allegedly refused to do any sales work while Guy Duhon wore a beard. The plaintiff's position in the disagreement may not have been entirely reasonable. However, for the reasons which follow, we are unable to say that it constituted grounds for dismissal.
Our review of the record convinces us that the plaintiff was hired primarily to supervise and advise, due to his expertise and extensive experience in wireline work. Although the plaintiff stated that he considered sales a part of his job duties, it appears that such work was not envisioned as a primary function of the plaintiff when he signed the employment contract. We find support for this proposition in the testimony regarding the amendment of the contract at the time it was signed. At the insistence of Guy Duhon, the contract was amended to show that supervision on jobs would be considered a part of the plaintiff's job duties. This testimony evidences a concern on the part of Guy Duhon with more precisely defining the plaintiff's job duties. The absence of any mention of sales work leads us to believe that, if it was intended that the plaintiff do sales work, such intention was not a primary consideration in the negotiation of the employment contract. Thus, the defendants' suggestion that the alleged failure of the plaintiff to do sales work constitutes a blanket refusal to perform his duties is not supported by the record.
It is also important to observe that the plaintiff held a position of authority with Slickline, Inc. While we may disagree with the position taken by the plaintiff on the issue of his son's beard, the record makes clear that the plaintiff, by virtue of his position, was entitled to have some input into policy-making, a function apparently shared with his sons. Thus, the plaintiff's strong stand on the issue, in our view, is not in the nature of insubordination, but rather a policy conflict with those with whom he shared authority.
With regard to the other incidents upon which defendants rely, we agree with the trial court that such do not constitute grounds for dismissal. The plaintiff specifically denied any wrongdoing or neglect of his duties with regard to these incidents. *1153 However, even if we accept the defendants' testimony concerning these matters, it seems that, in light of the plaintiff's position of authority and responsibility, the incidents do not establish cause for dismissal.
In consideration of the foregoing circumstances, we find no clear error in the trial court's determination that the plaintiff was dismissed without cause.
A party who establishes a breach of his employment contract due to wrongful dismissal, is entitled to either damages or specific performance of the contract, or to dissolution of the contract. In all these cases, the plaintiff is entitled to damages where they accrue. Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La.1981). There was no error in the trial court's judgment ordering the specific performance of the contract, nor in the award of back pay and benefits as damages for the breach.
For the foregoing reasons, the judgment appealed from is reversed in part, amended in part and affirmed in part, and recast to read as follows:
It is ordered, adjudged and decreed that there by judgment herein in favor of plaintiff, Gus Duhon, and against the defendants, Guy Duhon and Keith Duhon, condemning the latter to pay unto the plaintiff the full sum of $40,000.00, together with legal interest on said sum from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Gus Duhon, and against defendants, Slickline, Inc., Guy Duhon and Keith Duhon, ordering that plaintiff be reinstated to his former position with Slickline, Inc., together with full back salary and benefits, with legal interest on the amount due him from date of judicial demand until paid.
It is further ordered that defendants are cast for all costs of these proceedings at the trial level and on appeal.
REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART; AND, RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Ad Hoc.
[1] Counsel for plaintiff timely objected to the introduction of any evidence tending to vary or add to the written terms of the employment contract. The trial judge overruled the objection, finding that the evidence of additional job duties was offered to interpret or explain the written terms of the contract. We find no error in the admission of this testimony, since parol evidence is admissible "to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties." Scafidi v. Johnson, 420 So.2d 1113 (La.1982).
[2] Plaintiff's counsel also timely objected to the introduction of this testimony, which was elicited on cross examination. As explained in footnote 1, supra, we conclude that such testimony is admissible.