NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-165


TRACY A. WILLIS

VERSUS

STATE FARM MUTUAL AUTOMOBILE INS. CO., ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2014-1045-I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.


AFFIRMED.

**Nicholas A. Blanda**
**Anderson Dozier Blanda & Saltzman**
**P. O. Box 82008**
**Lafayette, LA 70598-2008**
**(337) 233-3366**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Tracy A. Willis**

**F. Douglas Wimberly**
**Cloyd, Wimberly & Villemarette, LLC**
**P. O. Box 53951**
**Lafayette, LA 70505-3951**
**(337) 289-6906**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **State Farm Mutual Automobile Insurance Company**
    **Ledee Burial Vault and Monument Company, Inc.**
    **Cornelia B. Ledee**

**PETERS, J.**

The plaintiff, Tracy A. Willis, appeals a trial court judgment dismissing her claims for damages against the defendants, Cornelia B. Ledee, Ledee Burial Vault and Monument Company, Inc., and State Farm Mutual Automobile Insurance Company. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The incident[1] giving rise to this litigation occurred at the intersection of Donlon and Moss Streets in Lafayette, Louisiana, shortly after 5:00 p.m. on March 15, 2013. At the time of the incident, Cornelia B. Ledee was driving a vehicle owned by Ledee Burial Vault and Monument Company, Inc. and insured by State Farm Mutual Automobile Insurance Company. Immediately before the incident, she had exited the United States Post Office parking lot onto Donlon Street and proceeded down the street toward its intersection with Moss Street. The flow of traffic at the intersection is controlled by a stop sign on Donlon Street.

At the same time, Ms. Willis approached the intersection on foot on her way to purchase food from a local restaurant located on the other side of Donlon Street. She was accompanied by a number of other individuals, including Deshante Richard,[2] Anna Colla Celestine, and Darnesha Carter.[3] This litigation involves Ms. Willis' claim that Ms. Ledee's vehicle struck her as she crossed Donlon Street at the intersection. Ms. Ledee denies that her vehicle made any contact with Ms. Willis.

---

[1] We use the word "incident" throughout the opinion to describe the basis of the litigation because the primary issue to be decided is whether an "accident" involving both Ms. Willis and Ms. Ledee actually occurred.

[2] Ms. Richard was fifteen years old at the time of the incident.

[3] Ms. Ledee asserts that two small children were traveling with the group as well.

After completion of the evidentiary phase of the trial on the merits held on September 29, 2015, the trial court took the matter under advisement. On October 16, 2015, the trial court issued written reasons for judgment rejecting Ms. Willis' claims for damages and dismissing all of the defendants from the litigation. After the trial court executed a November 6, 2015 judgment corresponding to its written reasons, Ms. Willis perfected this appeal, asserting four assignments of error:

> I.     The trial court committed legal error by failing to apply La. R.S. 32:212(a), which provides that a motorist must yield the right of way to a pedestrian crossing the road in a crosswalk.
>
> II.     The trial court was clearly erroneous in finding the defendant free from fault. The weight of the evidence proves that the defendant was solely responsible for this incident.
>
> III.     The trial court was clearly erroneous in disregarding the uncontradicted testimony of plaintiff's treating physician regarding the nature, extent and cause of her injuries.
>
> IV.     The trial court was clearly erroneous in failing to award the plaintiff the full extent of her damages.

For the following reasons, we find no merit in these assignments of error.

**OPINION**

This is basically a fact intensive case, and it is well settled that findings of fact made by a trial court are reviewed on appeal pursuant to the manifest error/clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A factual finding based upon a credibility determination may not be disturbed on appeal absent manifest error. *Phillips v. Fisher*, 93-928 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056.

Ms. Willis also raises one claim of legal error. "[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a

preponderance of the evidence." *Evans v. Lungrin*, 97-541, 97-577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735.

At trial, the parties presented the trial court with the testimony of the litigants, two of the individuals accompanying Ms. Willis at the time of the incident,[4] and the physician who treated Ms. Willis. While the facts leading up to the incident are not in conflict, the very basic particulars of the incident are in significant conflict.

The evidentiary record establishes, without conflict, that within a few minutes after the 5:00 p.m. closing time for the United States Post Office located on Donlon Street, Ms. Ledee exited the parking lot of that facility and turned onto Donlon Street in the direction of the Donlon and Moss Streets' intersection. Ms. Willis and her friends arrived at the intersection at approximately the same time and began to traverse the intersection. Ms. Willis claims that as she walked in front of Ms. Ledee's vehicle, she was struck on the left shoulder and pushed forward. After a brief exchange of some rather unladylike language between Ms. Willis and Ms. Ledee, Ms. Willis and her traveling companions continued to the restaurant and Ms. Ledee left the scene in her vehicle.

Around 6:30 p.m. that evening,[5] Ms. Willis telephoned the Lafayette City Police from her home and reported the incident. Approximately thirty minutes later, Lafayette City Police Officer Dana Broussard arrived at her residence in response to the telephone call. Officer Broussard took Ms. Willis' statement and, although both Ms. Richard and Ms. Celestine were present when Officer Broussard interviewed Ms. Willis, the officer took no statements from them.

---

[4] Ms. Carter did not testify at trial.

[5] The times are established because Ms. Willis testified that it took Officer Broussard thirty minutes to arrive at the residence, and Officer Broussard's records reflect that she arrived at approximately 7:00 p.m. According to Officer Broussard, Ms. Willis told her that the incident had occurred about ten minutes before she called law enforcement.

Based on the information she obtained from Ms. Willis, Officer Broussard contacted Ms. Ledee to take her statement. Ms. Ledee denied striking Ms. Willis and asserted that her vehicle was at a complete stop when Ms. Willis attempted to cross the street. Officer Broussard examined Ms. Ledee's vehicle and found no evidence of damage. Finding nothing that would further her investigation, Officer Broussard completed her report and closed her file.

Dr. Michael Heard, a Lafayette, Louisiana board certified orthopedic surgeon, first saw Ms. Willis professionally on April 22, 2013, or slightly over one month after the accident. When Ms. Willis provided the doctor with a history containing her version of the March 15, 2013 accident, he accepted that history as true when reaching his conclusions with regard to her condition and causation.

During his subsequent evaluation and treatment of Ms. Willis, Dr. Heard determined that Ms. Willis suffered from a number of preexisting conditions associated primarily with her lumbar spine. He further concluded that based on her stated history of no pain or problems prior to March 15, 2013, the injuries sustained on that day aggravated these preexisting conditions. Dr. Heard also concluded that Ms. Willis' continued claim of left elbow and hip pain was causally related to the incident of March 15, 2013. He also based this conclusion on the history provided by Ms. Willis. According to Dr. Heard, he would expect Ms. Willis to continue to suffer pain and discomfort associated with her injuries for an indefinite period, and he stated that she had suffered "an anatomical impairment of ten percent" of her body for the damage associated with her lower back and left hip.

Almost all of the remaining evidence presented is in conflict. Ms. Willis testified that when she and her traveling companions began crossing Donlon Street, they all spread out with Ms. Richard and Ms. Carter crossing first, followed next

4

by Ms. Celestine, and finally by Ms. Willis. Despite Ms. Ledee's testimony to the contrary, Ms. Willis did not mention the presence of any small children. According to Ms. Willis, the first three individuals had crossed safely before she stepped into the intersection; and Ms. Ledee's vehicle had not yet reached the intersection. She did recall seeing Ms. Ledee looking down and not at the situation before her as the vehicle approached. Ms. Richard, whose vantage point was over her shoulder after having completely traversed the intersection, supported Ms. Willis' testimony on this point. On the other hand, Ms. Celestine,[6] who was also looking back over her shoulder, but was still walking across the street, testified that Ms. Ledee's vehicle was already almost at the stop sign when Ms. Willis stepped off the curb into the intersection. Still, she asserted that Ms. Ledee's vehicle was moving when she observed it impact Ms. Willis. Ms. Ledee disagreed with all three witnesses and testified that she had come to a complete stop at the intersection before Ms. Willis left the curb.

With regard to physical contact, Ms. Willis testified that the front middle part of Ms. Ledee's vehicle struck her and pushed her down the street. Ms. Richard testified that she saw the Ledee vehicle strike Ms. Willis several times on the left shoulder; and Ms. Celestine observed the vehicle strike Ms. Willis on her left arm. Ms. Celestine testified that the impact threw Ms. Willis a short distance, and that she fell on her left side. Again, Ms. Ledee denied any impact between her vehicle and Ms. Willis. In fact, Ms. Ledee recalled that Ms. Willis was "fussing" at two children as she approached the intersection, and that she was at the front of the group, not at the rear as all of the pedestrian witnesses suggested. According to Ms. Ledee, Ms. Willis stopped in front of the vehicle while still "fussing" at the

---

[6] Ms. Celestine failed to respond to a subpoena to appear at the trial and, without objection from Ms. Ledee's counsel, Ms. Willis' counsel introduced her discovery deposition in lieu of her testimony.

two small children, and then "hollered, 'Hey, you hit my leg.'" Ms. Willis then came around to the driver's side of the vehicle, and the exchange became even more heated. Ms. Ledee denied seeing Ms. Willis fall at any time and observed her continue to the other side of the street after the verbal exchange.

With regard to physical injury, Ms. Willis testified that her elbow "instantly started swelling" after impact. Neither Ms. Richard nor Ms. Celestine commented concerning observing any physical injury, and Ms. Ledee testified that she observed no apparent injury. Officer Broussard testified that she did not observe any "cuts, or scrapes, or abrasions" on Ms. Willis, and when she asked if Ms. Willis needed medical attention, Ms. Willis responded that she did not.

All of the witnesses agree that Ms. Willis and Ms. Ledee exchanged heated words immediately after the incident. Ms. Willis testified that immediately after that exchange, Ms. Ledee left the scene in her vehicle. Ms. Richard recalled that Ms. Ledee remained at the scene "a little" and then left; and Ms. Celestine did not comment on that issue. Ms. Ledee testified that after Ms. Willis crossed the street and twice looked back in her direction, she waited for a break in the traffic and left the scene.

Ms. Willis complained at trial that after taking her statement, Officer Broussard did not ask to speak to any of the witnesses despite their presence at her house. On the other hand, Officer Broussard testified that she did not recall Ms. Willis identifying any witnesses and would certainly have taken their statements had she been made aware that they were present. Additionally, Ms. Willis testified that she declined Officer Broussard's offer to assist in getting her medical treatment, not because she was not injured, but because she had no one to watch her baby or give her a ride to the hospital.

In its reasons for judgment, the trial court stated in pertinent part:

6

This matter involves a credibility determination as to what took place between the parties on March 15, 2013. After listening to the testimony, this Court finds that the plaintiff behaved unreasonably in entering the roadway. Willis testified that she saw the white truck prior to making contact with it and could even see that the driver was looking down, yet inexplicably continued to proceed from the safety of the sidewalk, into the street, and in front of the vehicle. Even if this Court were to believe that the incident happened the way Willis described, it is difficult to attribute the extent of the alleged injuries to the minor impact which occurred. Following the alleged impact with the vehicle, Willis never fell to the ground and was able to continue walking to get her food and then walk back home. She failed to call the police until hours after the incident and showed no visible signs of injury. Based upon the testimony, it is the Court's belief that the plaintiff inadvertently walked into the stopped truck and bumped her elbow.

### *Assignment of Error Number One*

In her first assignment of error, Ms. Willis asserts that the trial court committed legal error when it failed to apply La.R.S. 32:212(A) to this case and that we should perform a *de novo* review of the record. Ms. Willis argues that La.R.S. 32:212(A) "requires the driver of a vehicle to stop and yield the right of way to a pedestrian crossing the roadway within a crosswalk." This failure, according to Ms. Willis, was prejudicial and, therefore, requires this court to review the record *de novo*. The defendants argue that the trial court simply gave more weight to Ms. Ledee's testimony regarding how the incident occurred and, therefore, did not commit legal error.

Louisiana Revised Statutes 32:212(A) provides:

> When traffic-control signals are not in place or not in operation, the driver of a vehicle shall stop and yield the right-of-way, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the roadway upon which the vehicle is traveling or the roadway onto which the vehicle is turning.

Although the trial court did not reference La.R.S. 32:212(A) in its reasons for judgment, we find that it committed no legal error in its analysis because, as argued by the defendants, the trial court made a factual determination that Ms.

Ledee's vehicle had come to a complete stop before encountering Ms. Willis, and that if any impact occurred, it occurred when Ms. Willis bumped her elbow on the stopped vehicle.

Analysis of this factual finding is subject to a manifest error/clearly wrong analysis, and not a legal analysis. We find no merit in this assignment of error and decline to perform a *de novo* review.

### *Assignments of Error Numbers Two and Three*

Both of these assignments of error assert that the trial court committed manifest error: (1) in finding Ms. Ledee free from fault, and (2) in disregarding Dr. Heard's uncontradicted testimony concerning Ms. Willis' injuries and the cause thereof. In evaluating the first of these two arguments, we note that it has long been held that "[t]he trial court is in the best position to assess the credibility of witnesses." *Duhon v. Slickline, Inc.*, 449 So.2d 1147, 1151 (La.App. 3 Cir.), *writ denied*, 452 So.2d 172 (La.1984). Additionally, "[i]t is also well established that witnesses are weighed and not counted, and the weight to be given evidence is not determined by the number of witnesses." *Id.*

In this matter, the trial court simply discounted Ms. Willis' testimony, based on the internal inconsistencies it found therein, and factually concluded that the incident occurred as described by Ms. Ledee. We find no manifest error in this factual determination.

In its reasons for judgment, the trial court did not consider Dr. Heard's testimony, but we find no error in that regard. While all of Dr. Heard's conclusions concerning Ms. Willis' medical condition are not in dispute, his conclusions concerning causation were based solely on the history provided by Ms. Willis. Given the fact that the trial court discounted that factual version of the incident, and given the fact that we find no manifest error in that finding, we find

8

no error in the trial court's apparent failure to consider Dr. Heard's causation evaluation.

## *Assignment of Error Number Four*

This assignment of error addresses the trial court's failure to award damages to Ms. Willis. Affirmation of the trial court's finding of no fault on the part of Ms. Ledee precludes any award of damages to Ms. Willis. Therefore, this assignment of error has no merit.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment rejecting all claims for damages by the plaintiff, Tracy A. Willis, against the defendants, Cornelia B. Ledee, Ledee Burial Vault and Monument Company, Inc., and State Farm Mutual Automobile Insurance Company, and dismissing the defendants from this litigation. We assess all costs of this appeal to Tracy A. Willis.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION
Uniform Rules—Courts of Appeal, Rule 2-16.3