WHIPPLE, C.J.
|2This is a companion case to Harris v. City of Baton Rouge, Parish of East Baton Rouge, 2016 CA 0164 (La. App. 1 Cir. -/-/-) (unpublished), also handed down this day. The background facts and procedural history of the matter are set forth in that case and will not be repeated herein. In this appeal, both defendant, the City of Baton Rouge/Parish of East Baton Rouge (“the City”), and plaintiff, Wilbert Harris, appeal the November 9, 2015 judgment of the trial court that awarded Harris past loss of wages, past loss of fringe benefits, penalty wages, expert witness fees, “lost DROP damages,” and costs.
The City raises the following assignments of error on appeal:
(1)' The trial court erred in awarding Harris penalty wages, attorney’s fees, and expert fees pursuant to LSA-R.S. 23:631, et seq. (“the Wage Payment Act”), because Harris’s claim for damages is pursuant to LSA-R.S. 49:113, not the Wage Payment Act.
(2) The trial court erred in granting interest to Harris for his DROP account payments, which were distributed to him as retirement checks.
(3) The trial court erred in failing to grant offsets for delays and continuances as well as for Harris’s failure to mitigate his damages.
The assignments of error raised by Harris on appeal are as follows:
(1) The trial court erred in finding that Harris was not entitled to his entire DROP balance.
(2) The trial court erred in failing to calculate Harris’s vacation and sick time that he would have accrued had he continued working.
DISCUSSION
Penalty Wages and Expert Fees
(The City’s Assignment of Error No. 1)
In its first assignment of error, the City contends that the trial court erred in ^awarding Harris penalty wages, attorney’s fees, and expert fees.[1]
*408 For the reasons set forth in the companion appeal, we likewise find herein that the trial court erred in awarding “penalty wages” to Hams. As discussed in the companion appeal, this case is governed by LSA-R.S. 49:113, not LSA-R.S. 23:631 of the Wage Payment Act. Louisiana Revised Statute 49:113 addresses salaries and wages of employees in the state or city civil service and off-sets for wages earned in outside employment. Notably, LSA-R.S. 49:113 does not authorize the award of “penalty wages.” Punitive damages may not be awarded by a court of this state unless authorized. LSA-C.C. art. 3546. We are unable to find any authority for the award of punitive damages, he., penalty wages, under the facts of this case. Therefore, we find that the trial court erred in awarding Harris “penalty wages” in the amount of $13,551.00.
However, we find no error in the trial court’s award of expert witness fees in favor of Harris. The trial court has great discretion in awarding costs, including expert witness fees, deposition costs, exhibit costs, and related expenses. Bourgeois v. Heritage Manor of Houma, 96-0135 (La.App. 1 Cir. 2/14/97), 691 So.2d 703, 706. Louisiana Revised Statute 13:4533 provides:
The costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
Moreover, LSA-C.C.P. art. 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
| ¿Accordingly, in the instant case, we are unable to find that the trial court abused its discretion in awarding Harris $5,856.00 for expert witness fees, even though the trial court erred in awarding him “penalty wages.”
Interest on DROP Payments
(The City’s Assignment of Error No. 2)
In its second assignment of error, the City contends that the trial court erred in awarding Harris “lost DROP damages.” The $33,818.00 awarded to Harris as “lost DROP damages” is the amount of interest, as calculated by Harris’s forensic accounting expert, that Harris would have earned on his DROP account if the City had not “illegally” terminated him and if the City had reinstated him to his prior position following the decision of the Personnel Board.[2]
Following his termination, Harris received his retirement checks directly, rather than the checks being paid into his DROP account. Accordingly, the City argues that since Harris received his checks directly, he “could have invested them in the same manner an investment into the DROP was made” and, therefore, no interest should be owed because Harris had the benefit of receiving the money immediately, rather than having the funds placed into his DROP account. We disagree.
Harris entered into a contract with the City to enter into the DROP program for five years. Harris was terminated after *409 one year in the program and was never reinstated to his prior position. Thus, Harris lost the opportunity for four years of participation in DROP and related benefits. If Harris had not been “illegally terminated,” and if the City had reinstated him to his prior position following the decision of the Personnel Board, Harris’s retirement checks would have been deposited into his DROP account, and undisput-edly would have accrued greater interest on this account.
| fiThe standard of appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La. 1993). We have found no basis under the present law for denying interest on wages that were lawfully due and would have been paid into Harris’s DROP account and would have accrued economic benefits, but for the City’s actions in wrongfully terminating him and failing to reinstate him to his employment position in accordance with the findings of the Personnel Board. Accordingly, we are unable to say that the trial court abused its discretion in awarding Harris interest he would have earned on his DROP account had he not been terminated.
Damage offsets
(The City’s Assignment of Error No, 3)
In its final assignment of error, the City argues that the trial court erred in failing to offset the damages awarded to Harris for delays and continuances caused by Harris, as well as for his failure to mitigate his damages.
At the hearing, the City introduced a timeline of the continuances of Harris’s hearing before the Personnel Board. The City argues that the damages awarded should be offset for the time period when these continuances took place, because the continuances were due to the fact that Harris previously agreed to a settlement with the City, wherein Harris would be reemployed as a maintenance worker III, and dismissed his appeal with the Personnel Board. The City notes that Harris later withdrew from the settlement, failed to report to work for the job that was agreed to in the settlement, and then reinstated his appeal with the Personnel Board.
Harris testified at the hearing before the trial court that he did not agree to a settlement or any of the alternative job positions offered to him by the City. Additionally, the City acknowledged that there was not a signed settlement agreement by Harris. After considering this conflicting testimony, we are unable |flto find that the trial court erred in refusing to offset Harris’s damage award for “delays and continuances” as suggested by the City.
The City also argues that Harris should not be entitled to wages after August 29, 2011. Following the Personnel Board hearing, the City received a letter, dated August 29, 2011, from Harris’s former attorney stating that Harris no longer wished to return to work with the City. Harris testified that he had not seen this letter and, more importantly, that he was never contacted by the City regarding any employment opportunities after the Personnel Board hearing. Additionally, the City presented conflicting testimony as to whether Harris was not offered his prior employment position back because of the August 29, 2011 letter or other reasons. Specifically, the City’s Assistant Public Works Director testified that Harris was not offered his same employment position back following the Personnel Board hearing because the position was filled.
In concluding that Harris was entitled to wages for the time period of August 20, 2011, through his anticipated retirement date, the trial court made a specific credibility determination apparently finding Harris’s testimony that he never saw or *410 authorized his attorney to write the August 29, 2011 letter as credible. When factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given great deference by the appellate court. Thus, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Theriot v. Bergeron, 2005-1225 (La.App. 1 Cir. 6/21/06), 939 So.2d 379, 385.
The City also argues that Harris’s wages should be offset by the amount of wages that he would have earned as a maintenance worker III — the position offered to him by the City prior to the Personnel Board hearing. As required by LSA-R.S. 49:113, Harris’s wages were offset by wages that he received from private employment undertaken following his termination by the City. On review, |7we are unable to find any legal support for the proposition that a wrongfully terminated employee’s damages may be further offset for failure to mitigate by not accepting an alternative position offered to him by his employer for less pay. In other cases involving employee contracts, the courts have found there is no duty to mitigate lost salary damages on this basis. See Andrepont v. Lake Charles Harbor and Terminal Dist., 602 So.2d 704, 707 (La. 1992).[3]
Accordingly, we find no merit to the City’s argument that Harris’s damage award should have been further reduced for his alleged failure to mitigate.
Denial of Entire DROP Balance
(Harris’s Assignment of Error No. 1)
In his first assignment of error, Harris contends that the trial court erred by not awarding him an additional $217,354.00, which constitutes the amount that would have been contributed to his DROP account over the next four years if the City had reinstated him to his prior employment position.
At the hearing, Harris testified that pri- or to his termination, he received his paycheck directly and his retirement check was put into his DROP account. Following his termination, he received his retirement check directly on a monthly basis, rather than it being deposited into his DROP account. Harris’s forensic accountant testified that Harris received the retirement checks that would have gone into his DROP account, explaining that “the amount that was going to be put into that [DROP] account was paid to [Harris] so the only difference would be interest — or ... any earning that he would have made on that money, had it been |sin that account.” Accordingly, Harris’s accountant’s report does not include the $217,354.00 in “back DROP account contributions” that Harris seeks on appeal.
After considering the testimony and evidence, we agree with the City that an additional award to Harris for “back DROP account contributions” would be a “double-dip,” as Harris undisputedly has already received these funds via checks paid to him directly.
Vacation and Sick Time
(Harris’s Assignment of Error No. 2)
The trial court awarded Harris $8,618.00 for “past loss fringe benefits,” ie., vacation and sick time. On appeal, Harris seeks an *411 increase in the amount awarded to $43,900.00, arguing that the amount awarded was for only one year (2008), while he should be awarded this amount for four additional years.
Harris’s expert forensic accountant report calculated his lost fringe benefits as $8,618.00. Moreover, Harris’s post-trial brief and the suggested judgment that he filed with the trial court state that fringe benefits should be awarded in the amount of $8,618.00. There is no evidence or argument in the record suggesting that Harris’s award for “past loss fringe benefits” should be greater than the $8,618.00 that he was actually awarded. As a general rule, appellate courts will not consider issues that are raised for the first time on appeal. Jackson v. Home Depot, Inc., 2004-1653 (La.App. 1 Cir. 6/10/05), 906 So.2d 721, 725. Accordingly, we decline to consider Harris’s request, asserted for the first time on appeal, for an increase in the amount awarded to him for “past loss fringe benefits.”
CONCLUSION
For the above and foregoing reasons, the portion of the November 9, 2015 judgment awarding Harris $13,551.00 in penalty wages is hereby reversed and vacated. The remaining portions of the November 9, 2015 judgment, awarding RHarris past loss of wages, past loss of fringe benefits, expert witness fees, lost DROP damages, and costs, are hereby affirmed. Costs of this appeal are assessed equally against Wilbert Harris and the City of Baton Rouge/Parish of East Baton Rouge.
AFFIRMED IN PART, AND REVERSED IN PART.

. At the outset, we note that although the City raises the issue of attorney’s fees in this ap *408 peal, the judgment at issue herein does not actually award attorney’s fees. Instead, attorney’s fees were awarded in the December 14, 2015 judgment of the trial court, which is the subject of the companion appeal, Harris v. City of Baton Rouge, 2016-0164 (La. App. 1 Cir. -/-/-) (unpublished), also handed down this day.

. The City did not offer any contradictory expert testimony.

. See generally Baker v. Southern University, 590 So.2d 1313, 1317 (La. App. 1st Cir. 1991), wherein this court stated:
In all other cases involving wage payments under employment contracts [judicial] interest is allowed and is allowed on each payment as it becomes due. We see no reason why the rule should be different for back wages owed by the State or its agencies. (Internal citation omitted.)