NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

*(Mut.*

NO. 2024 CA 0072

MICHAEL G. GILPIN

VERSUS

SCOTT MURPHY AND PERFORMANCE BODY WORKS, LLC

*CONSOLIDATED WITH*

NO. 2024 CA 0073

MICHAEL G. GILPIN

VERSUS

SCOTT MURPHY AND PERFORMANCE BODY WORKS, LLC

*Judgment Rendered:*   OCT 1 8 2024

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case Nos. 2020-11159 and 2020-11270

The Honorable August J. Hand, Judge Presiding

* * * * * * * *

Anton Martynenko
Mandeville, Louisiana

Counsel for Plaintiff/Appellant
Michael G. Gilpin

J. Craig Diamond
New Orleans, Louisiana

Counsel for Defendants/Appellees
Scott Murphy and Performance
Body Works, L.L.C.

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Hester, J, concurs

Chutz, J. concurs in part; dissents in part
by Mui.

**THERIOT, J.**

Michael G. Gilpin appeals the 22nd Judicial District Court's January 15, 2023 judgment in favor of Scott Murphy and Performance Body Works, LLC. For the following reasons, we affirm. We also grant Scott Murphy and Performance Body Works, LLC's motion to strike certain references in Michael G. Gilpin's appellate brief.

## MOTION TO STRIKE

In April 2024, Scott Murphy and Performance Body Works, LLC filed a motion to strike certain references to websites in Michael G. Gilpin's appellate brief. An appellate court must render its judgment upon the record on appeal. See La. Code Civ. P. art. 2164; *Harrelson v. Arcadia*, 2010-1647 (La. App. 1 Cir. 6/10/11), 68 So.3d 663, 665 n.4. We cannot review evidence that is not in the record, nor can we receive new evidence. However, the arguments of counsel contained in appellate briefs and references to facts and issues that are not currently before the court are not considered record evidence. This court has no authority to consider on appeal facts referred to in appellate briefs if those facts are not in the record on appeal. *In re Succession of Badeaux*, 2008-1085 (La. App. 1 Cir. 3/27/09), 12 So.3d 348, 352. This Court can further take judicial notice of government websites. *Del Vescovo v. Air & Liquid Sys. Corp.*, 2023-0116 (La. App. 4 Cir. 11/15/23), 377 So.3d 759, 768 n.7. Gilpin's appellate brief contains references to various, nongovernment websites. Consequently, to the extent that Michael G. Gilpin's brief references websites containing facts that are not part of the appellate record before us, Scott Murphy and Performance Body Works, LLC's motion to strike is granted.

## FACTS AND PROCEDURAL HISTORY

On March 25, 2019, Michael G. Gilpin was involved in a motor-vehicle accident, which damaged the front of his 2001 Ford F-350 truck. On the same day,

Gilpin contacted Scott Murphy, mechanic and owner of Performance Body Works, LLC ("PBW"), via text message to perform the repairs.[1] Gilpin also requested that Murphy paint the entire truck with a custom paint job after making the repairs related to the accident.

Gilpin brought the truck to PBW for repair on March 26, 2019. He signed a repair authorization form on the same date and provided his phone number, email address, and an incomplete physical address. Relevantly, the repair authorization form provided that PBW may start the process of obtaining a permit to sell the vehicle if it is not picked up and paid for within ten days of "intake." The form further provided that the signee would receive two certified letters before PBW "can move forward with the permit to sell."

Gilpin's insurer, Allstate Property & Casualty ("Allstate"), provided an initial estimate of $3,586.67, which was later raised to $4,079.79.[2] According to Murphy, the initial repairs to the front of the truck were completed on May 1, 2019.[3] Murphy asserts that he called Gilpin on May 1, 2019 to request payment and that Gilpin agreed to come to PBW that Friday, May 3, 2019, to pay, but never appeared.

Murphy and Gilpin communicated intermittently via text message over the next several months. Relevantly, on June 28, 2019, Murphy sent Gilpin photographs of a preliminary estimate generated by PBW and requested payment for the repairs made to the front of the truck. Gilpin responded the following day requesting a sit-down conversation with Murphy to "discuss the estimate and some

---

[1] Murphy previously performed mechanic work for Gilpin on several occasions.

[2] Jessica Murphy, an employee of PBW, testified that the original estimate did not include certain damages to the truck's seatbelt. Jessica supplemented the information previously provided to Allstate to include the cost of the repairs needed for the seatbelt, which came to $493.12. This supplement raised the estimate to $4,079.79.

[3] Murphy testified that the truck was prepped for the requested paint job and he was waiting on Gilpin to pick the color he wanted for the rest of the vehicle. Gilpin testified that he never received a phone call from Murphy stating that the work was completed.

3

other things." He further wrote, "Hopefully we can come to a mutual understanding and agreement. Let me know when the best time is so we can handle this. Thank you in advance." The parties exchanged several subsequent messages wherein Murphy requested payment and repeatedly inquired as to when Gilpin would come to PBW. After a brief text message exchange on August 10, 2019, Gilpin did not message Murphy again until February 26, 2020.

On August 5, 2019, a few days prior to his last contact with Gilpin, Murphy instructed his employee Jessica Murphy to start the process of obtaining a permit to sell the truck pursuant to La. R.S. 32:1726, which allows mechanics to dispose of abandoned vehicles in their possession and collect the charges and cost of storage and repair. To obtain the permit to sell, Jessica utilized TowLien, a nationwide lien process software that assists those storing vehicles in obtaining a permit to sell a stored vehicle in order to mitigate the financial loss caused by the vehicle owner's failure to pay. TowLien sent the notices required by La. R.S. 32:1720 and La. R.S. 32:1728(A)(2) on August 6, 2019 and September 24, 2019, respectively, to the address on Gilpin's vehicle registration forms. Both notices were returned undelivered.[4] Despite the language of the repair authorization form, the notices were not sent by certified mail. On October 30, 2019, the Office of Motor Vehicles issued a permit to sell the truck to PBW. Murphy asserts that upon receipt of the permit, he painted the vehicle and prepared it for sale.

On February 26, 2020, Gilpin came to PBW for the truck but did not pay for the repairs. Murphy did not give Gilpin possession of the truck at this time. Subsequently, on March 5, 2020, Gilpin filed a petition for a writ of sequestration wherein he alleged that Murphy fraudulently and incorrectly retitled the truck in

_____

[4] The vehicle registration for Gilpin's truck listed his address as 216 Beech Street, Covington, Louisiana. Gilpin testified at trial that he resides at 220 Spruce Street, Mandeville, Louisiana, but he failed to include the city and state when providing his address on the repair authorization form.

the name of PBW and forged Gilpin's signature on a check from his insurance company addressed to PBW and Gilpin. On the same date, the trial court signed an order appointing Gilpin as keeper of the truck. Shortly thereafter, Murphy learned that the truck had been sequestered by judge's order. Murphy released the truck to the St. Tammany Parish Sheriff's Department, who placed the truck in Gilpin's possession.[5] On March 16, 2020, Gilpin filed a petition for damages in a separate case raising similar allegations.

In response to Gilpin's sequestration petition, PBW (and Murphy, its authorized representative) filed peremptory exceptions of no cause and no right of action, as well as a motion for dissolution of writ of sequestration. Murphy and PBW also filed an answer and reconventional demand in both cases wherein it asserted that Gilpin still owed PBW over $8,000.00 for repairs and custom body work. They requested that the truck be returned to PBW and Gilpin be ordered to pay for the repairs, custom body work, towing, storage, attorney's fees, court costs, and additional damages. The two cases were consolidated for trial on April 24, 2020.

On July 2, 2020, Gilpin filed an answer to Murphy and PBW's reconventional demand wherein he generally denied their allegations.[6] On November 22, 2021, the parties filed a joint motion to set the matter for trial. Trial on the matter was held on September 13, 2022.

On December 28, 2022, the trial court issued reasons for judgment wherein it found that Murphy and PBW followed the proper procedures for obtaining a permit to sell Gilpin's truck. The trial court further found that this course of action

_____

[5] As of the date of trial, Gilpin was in possession of the truck.

[6] Murphy and PBW filed a motion for summary judgment on December 1, 2020, which Gilpin filed an opposition to on February 24, 2021. A hearing on the motion for summary judgment was held on February 25, 2021, after which the trial court denied the motion without prejudice as premature because the parties had not yet completed the discovery process.

became necessary after Gilpin failed to contact the repair shop for almost seven months. The trial court awarded to Murphy $3,568.67 in damages for the original repairs less the amount paid by Allstate; $6,588.67 in damages for the additional work done by PBW; $970.00 for the storage of the vehicle from April 30, 2019 through August 4, 2019; $2,160.00 in damages for storage of the vehicle from August 5, 2019 to November 4, 2019; and $7,974.00 in attorney's fees.

Gilpin filed a motion for suspensive appeal on January 13, 2023, before a judgment was issued. On January 15, 2023, the trial court signed a judgment dismissing Gilpin's petitions and awarding to Murphy the damages listed above.[7]

## ASSIGNMENTS OF ERROR

Gilpin assigns the following as error:

(1) The trial court erred by misinterpreting and failing to enforce the Repair Authorization Form.

(2) The trial court erred by excusing Appellees' refusal to perform their contractual obligation.

(3) The trial court erred in awarding damages to Appellees.

## DISCUSSION

### Assignments of Error #1 and #2

The actions taken in this case fall under the Louisiana Towing and Storage Act, La. R.S. 32:1711 *et seq.* ("the LTSA"). Louisiana Revised Statutes 32:1726 requires the owner of a storage facility to make certain notifications to the owner of a vehicle left in their possession. See La. R.S. 32:1726(A).

Relevantly, La. R.S. 32:1719(A) requires the owner of a facility where a vehicle is being stored to report the vehicle's make, model, vehicle identification number, license plate number, state of issuance, and expiration date to the

---

[7] The fact that the motion for appeal was filed before the judgment appealed from was signed is of no consequence, since the prematurity of the filing of the motion for appeal was cured on the date the judgment was signed. See *Radhi v. Nguyen*, 2022-01203 (La. 8/15/22), 344 So.3d 62 (per curiam); see also *Succession of Brown*, 2023-1137 (La. App. 1 Cir. 6/4/24), 391 So.3d 703, 705 n.3.

6

Department of Public Safety and Corrections ("the Department") or its authorized agent within three business days of the vehicle's storage date.[8] The Department (or its authorized agent) shall then provide to the owner of the storage facility the most current owner and lienholder information available on the stored vehicle. See La. R.S. 32:1719(A). Within ten business days of the Department providing the owner and lienholder information, the owner of the storage facility shall send notice with a certificate of mailing to the owner of the vehicle at the owner's last known address.[9] La. R.S. 32:1720.

When the vehicle at issue is over five years old, the storage facility owner – after forty-five days from the date of storage – shall send a final notice by mail with a certificate of mailing which must comply with the notice requirements of La. R.S. 32:1720 to the stored vehicle's owner. See La. R.S. 32:1728(A)(2). The final notice shall inform the stored vehicle's owner that unless he pays all outstanding charges and claims on the vehicle or makes arrangements with the storage facility owner for the continued storage of the vehicle, the storage facility owner may apply for a permit to sell from the Department after fifteen days from the date the final notice is mailed to the stored vehicle's owner. See La. R.S. 32:1728(A)(3).

Gilpin's arguments relate to the interpretation of a repair authorization form provided by PBW and signed by Gilpin. Interpretation of a contract is a question of law. Thus, an appellate court applies the *de novo* standard of review. *Cregg v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 2023-0127 (La. App. 1 Cir. 3/1/24), 385 So.3d 280, 288, writ denied, 2024-00409 (La. 6/5/24), 385 So.3d 1158. Generally, legal agreements have the effect of law upon

---

[8] Jennifer Olinde, TowLien's Program Manager for Beacon Software, testified that TowLien is a licensed representative of the State of Louisiana.

[9] The information required in the notice is provided in La. R.S. 32:1270(B).

7

the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. See La. Civ. Code art. 1983; *Brown v. McGinity*, 2021-1405 (La. App. 1 Cir. 7/14/22), 347 So.3d 900, 905, writ denied, 2022-01239 (La. 11/8/22), 349 So.3d 575. Interpretation of a contract is the determination of the common intent of the parties. Thus, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. Moreover, the parties are free to contract for any object that is lawful. See La. Civ. Code art. 1971; *Brown*, 347 So.3d at 906. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Prejean v. Guillory*, 2010-0740 (La. 7/2/10), 38 So.3d 274, 279. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046; *Prejean*, 38 So.3d at 279.

The repair authorization form provides in pertinent part:

> I hereby authorize the repair work hereinafter set forth to be done along with the necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in vehicle. In case of fire, theft or any other cause beyond your control or for any delays caused by unavailability of parts or delays in part shipments by the supplier or transporter. I hereby grant you and your employee's permission to operate the vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on vehicle listed below to secure the amounts to repair thereto. **For Storage Only: If vehicle is being stored, and it is not picked up and paid for within 10 days of intake we can start the process for a permit to sell. You will receive two certified letters before we can move forward with the permit to sell.** (Emphasis added.)

Gilpin argues that the repair authorization form imposes the additional obligation of sending two certified letters to Gilpin relating to the storage of the vehicle before moving forward with a permit to sell.[10]

---

[10] Although Gilpin initially asserted a breach of contract claim against Murphy and PBW, the basis of that claim was Murphy and PBW's alleged refusal "to perform their obligations to repair

8

However, the repair authorization form further obligates customers to pick up and pay for the vehicle within ten days of "intake." Murphy testified that he contacted Gilpin on May 1, 2019 to let him know that the initial repairs had been completed. On June 28, 2019, Murphy messaged Gilpin informing him that he was "very close to paint[ing]" and requesting payment for the repairs relating to the collision.[11] Gilpin confirmed receipt of Murphy's text messages the same day and shortly thereafter requested a sit-down conversation with Murphy to discuss the estimate. Murphy and Gilpin exchanged text messages on several occasions until August 10, 2019, after which Gilpin did not contact Murphy until February 26, 2020, 243 days after Murphy requested payment for the initial repairs on June 28, 2019. Accordingly, the time frame provided for in the repair authorization expired well before Gilpin contacted Murphy on February 26, 2020.

Gilpin testified about his failure to pay PBW at trial. He opined that the work on his truck was never completed. Specifically, Gilpin asserted that Murphy failed to remove certain emblems and replace the truck's tailgate. Gilpin further asserted that Murphy and PBW had failed to properly prepare the truck for painting. Gilpin reiterated that he did not pay Murphy because the work "wasn't done."[12] However, Gilpin acknowledged that the original scope of work was to repair the damage from the accident and admitted that replacing the tailgate and painting the entire truck were not related to the accident. Considering the foregoing, we find that the repair authorization form was first breached by Gilpin when he failed to pay for the repairs.

---

Mr. Gilpin's truck in a timely and proper fashion – applying the correct agreed-upon paint color."

[11] Murphy indicated that he did not have the capital to do the rest of the job and reiterated that he was only asking for payment for the "first part."

[12] Murphy testified in response that PBW performed all repairs on the estimate aside from painting the truck.

Having found Gilpin to have breached the repair authorization form, we must now determine whether PBW followed the process detailed in La. R.S. 32:1711 *et seq.* PBW initiated the TowLien process on August 5, 2019. TowLien sends two notices to the owner of the vehicle at issue. The first notice informs the owner that the vehicle has been placed in storage. The second notice is a final notice, which is mailed forty-six days after the first notice. If the vehicle remains unclaimed, the facility can create a permit to sell application packet through TowLien. The application and any other required documents are then mailed to the Office of Motor Vehicle headquarters in Baton Rouge for the state to review the application and determine whether to issue the permit or decline to do so.

On August 6, 2019 and September 24, 2019, respectively, the notices required by the LTSA were sent by regular mail to Gilpin at 216 Beech Street, Covington, Louisiana, the address on Gilpin's vehicle registration.[13] Jessica testified that both notices were returned undeliverable. Gilpin testified that he has lived at 220 Spruce Street, Mandeville, Louisiana since 2014, but that he resided at 2016 Beech Street, Covington, Louisiana for twelve years prior to moving to 220 Spruce Street.[14] Thus, even if TowLien had sent certified letters, the address still would have been incorrect.[15]

Our review of the repair authorization form indicates that the purpose of the form was to obtain Gilpin's permission to perform the requested repairs. Gilpin

---

[13] Jennifer Olinde, TowLien's Program Manager for Beacon Software, testified at trial that TowLien pulls information from the Office of Motor Vehicle's DMV registration database, but does not warrant that the information is correct.

[14] Every vehicle required to be registered shall be registered in the parish of domicile of the owner. See La. R.S. 47:501(B). Every application for registration shall be signed by the owner and contain the address of his domicile if he is domiciled in Louisiana. See La. R.S. 47:503(A)(2). The address required shall be the physical location of the applicant's residence, in addition to the mailing address. See La. R.S. 47:503(A)(3).

[15] Additionally, the address Gilpin wrote on the repair authorization form was missing the city and state.

10

provided that authorization but failed to pay for the repairs made, thus breaching the repair authorization form. Louisiana Revised Statutes 32:1726 requires only that a vehicle be left with a repairman for repair and not claimed after being placed in storage. The record herein supports the conclusion that the vehicle was left with PBW for repair, that the repairs were not paid, and that the vehicle was placed in storage as a result of the non-payment of charges. *See Williams v. Natchitoches Ford-Lincoln-Mercury*, 2008-1167 (La. App. 3 Cir. 4/1/09), 2009 WL 840327 (unreported) at *1-2. Although Murphy and PBW sent two uncertified letters, they still clearly initiated and followed the process of acquiring a permit to sell pursuant to the LTSA. These assignments of error lack merit.

**Assignment of Error #3**

Gilpin argues that the trial court erred in awarding damages to Murphy and PBW under La. Code Civ. P. art. 3506. Gilpin further argues that the record contains evidence of bad faith, conversion, and fraud such that the trial court should have found Appellees to be liable under LUPTA. The standard of appellate review of a damage award is clear abuse of discretion. *Harris v. City of Baton Rouge*, 2016-0163 (La. App. 1 Cir. 12/22/16), 209 So.3d 405, 409, writ denied, 2017-00155 (La. 3/31/17), 217 So.3d 360.

The trial court awarded the following damages: $3,568.67 in damages for the original repairs less the amount paid by Allstate; $6,588.67 in damages for the additional work done by PBW; $970.00 for the storage of the vehicle from April 30, 2019 through August 4, 2019; $2,160.00 in damages for storage of the vehicle from August 5, 2019 to November 4, 2019; and $7,974.00 in attorney's fees. Gilpin specifically challenges the award of attorney's fees and the award of damages for the work performed on the truck.

11

Louisiana Code of Civil Procedure article 3506 provides in pertinent part:

> The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits.

In the instant case, Murphy and PBW requested damages in their answer and reconventional demand.

The writ of sequestration is an extremely harsh remedy, and when a party makes use of this powerful legal weapon, he must be ready to respond in damages, including attorney fees, if it is found wrongfully issued. *Hargett v. Hargett*, 98-1470 (La. App. 3 Cir. 3/31/99), 732 So.2d 666, 670, writ denied, 99-1291 (La. 6/25/99), 746 So.2d 603, citing *Sears, Roebuck and Company v. Guilbault*, 452 So.2d 333, 336 (La. App. 4 Cir. 1984). A writ of sequestration is dissolved when the defendant prevails on the merits of the case, or when the underlying obligation is extinguished; where there is no remaining claim of debt, there is no valid reason for a sequestration. *Spiers v. Roye*, 2004-2189 (La. App. 1 Cir. 2/10/06), 927 So.2d 1158, 1170, opinion set aside in part on other grounds on reh'g (May 19, 2006).

As set forth above, PBW followed the requirements of the LTSA in acquiring a permit to sell Gilpin's truck. The trial court dissolved the writ of sequestration in its January 15, 2023 judgment after ruling in favor of Murphy and PBW on the merits. Because Murphy and PBW prevailed after trial on the merits, attorney's fees for the services rendered in connection with the dissolution of the writ may be awarded. See La. C.C.P. art. 3506. The trial court awarded $7,974.00 in attorney's fees based on the information provided by Murphy and PBW. Having found an award of attorney's fees is warranted in the instant case, we

12

further find this amount to be reasonable based upon the time entries submitted by Murphy and PBW.

Gilpin also challenges the trial court's awards for work performed on the truck (namely, $3,568.67 in damages for the original repairs less the amount paid by Allstate and $6,588.67 in damages for the additional work done by PBW) were contrary to the evidence presented. The award in the instant case was based upon the estimates prepared by PBW.

Two experts testified at trial – Patrick Fox and Paul Cosma. Fox, Murphy's expert, examined and photographed the truck on or about May 27, 2022.[16] Fox opined that the paint job done by Murphy was satisfactory.

Paul Cosma, Gilpin's expert in auto repair and body paint, inspected the truck in April 2022. Cosma opined that Murphy failed to do all of the necessary preparation in anticipation of the paint job. Cosma also opined that Murphy should be paid for the repairs he made. He later clarified that Murphy should be paid for the parts he put on the truck but described the paint job as "a mess."

Fox and Cosma disagreed as to whether Murphy and PBW's work was substandard. Cosma testified that additional repairs costing an estimated $22,000.00 would be needed to repair and repaint the truck due to PBW's failure to properly prepare the truck. Fox, on the other hand, testified that the only issue he could find with the paint job itself was the presence of orange peel, which he believed could be fixed by wet sanding and buffing the entire truck. He estimated that those additional repairs would cost $1,000, not $22,000.

To calculate the damage awards for work performed on the truck, the trial court considered the estimates provided by Murphy. Aside from Cosma's

---

[16] Fox opined that the truck sustained physical damage after being painted. He testified that it was his impression that the truck had been parked outside somewhere for some period of time – rather than in a storage building - and that the paint job had been damaged. As noted above, the truck was in Gilpin's possession from March 2020 until at least the date of trial, September 24, 2022.

assertion that it would cost $22,000.00 to repair and repaint the truck, Gilpin presented no evidence regarding how much the repairs should have cost. The trial court clearly accepted Fox's opinion over Cosma's. Considering the record before us, we find no abuse of discretion in this determination.

Lastly, Gilpin argues that Murphy and PBW should have been found liable under the Louisiana Unfair Trade Practices Act ("LUTPA") instead of "being rewarded for converting the truck, breaching in bad faith, and forging Mr. Gilpin's signature on a check."[17] Having determined that Murphy and PBW legally acquired a permit to sell the truck, we do not agree that Gilpin has proven his LUTPA claims. This assignment of error lacks merit.

## DECREE

For the above and foregoing reasons, the 22nd Judicial District Court's January 15, 2023 judgment in favor of Scott Murphy and Performance Body Works, LLC is affirmed. We also grant Scott Murphy and Performance Body Works, LLC's motion to strike certain references in Michael G. Gilpin's appellate brief. Costs of this appeal are assessed to Appellant, Michael G. Gilpin.

**AFFIRMED; MOTION TO STRIKE GRANTED.**

---

[17] While the truck was undergoing repairs, PBW received a supplemental check in the amount of $498 from Allstate made out to Performance Body Works and Gilpin. Jessica signed Gilpin's name on the check without authorization to do so. PBW put that money towards the repairs made and credited Gilpin with the same amount. The trial court found that because the repair shop credited Gilpin with the amount paid by his insurance company, no damages were suffered by Gilpin in this regard. We agree.

MICHAEL G. GILPIN

VERSUS

SCOTT MURPHY AND
PERFORMANCE BODY
WORKS, LLC

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

NO. 2024 CA 0072

*WRC*

*Rymt* CHUTZ, J., concurring in part and dissenting in part.

I concur in part and dissent in part from the majority opinion. While I agree defendants complied with the notice requirements provided by La. R.S. 32:1720 (the LTSA), I disagree with the majority's conclusion that the Repair Authorization Form (RAF) did not impose a "higher burden" on defendants than the one required by the LTSA. The RAF plainly states plaintiff "will receive two certified letters" before defendants moved forward with a permit to sell, which is greater notice than the LTSA requires. Nevertheless, because plaintiff failed to provide a complete address on the RAF for defendants to send the notice, I believe defendants were relieved of the duty to provide notice by certified letter. Under such circumstances, I concur with the majority's conclusion that defendants provided adequate notice before obtaining the permit to sell.

I dissent from that portion of the majority opinion affirming the award of attorney fees to defendants as damages for the wrongful issuance of the writ of sequestration. Defendants were entitled to recover *only* those attorney fees "rendered in connection with the dissolution of the writ." La. C.C.P. art. 3506. The trial court, however, appears to have awarded the full amount of attorney fees submitted by defendants without distinguishing between the portion of those fees incurred in connection with the dissolution of the writ and the portion incurred in defendants obtaining judgment on their reconventional demand and in defending against plaintiff's damage suit. Accordingly, I would remand this matter to allow

the trial court to make a determination of what portion of the submitted attorney fees

were incurred in connection with the dissolution of the writ of sequestration.